**CORNING GLASS WORKS, Appellant,**

v.

**DEPARTMENT OF REVENUE, Commonwealth of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 6, 1981.

Discretionary Review Denied June 9, 1981.

Robert L. Maddox, Jon L. Fleischaker, Raymond M. Burse, Wyatt, Grafton & Sloss, Louisville, for appellant.

Frank A. Logan, Louisville, William P. Curlin, Jr., John N. Hughes, Legal Division, Dept. of Revenue, Frankfort, for appellee.

Before HAYES, C. J., and HOWERTON and WHITE, JJ.

HOWERTON, Judge.

*Corning Glass Works* appeals from a judgment of the Franklin Circuit Court affirming a decision by the Kentucky Board of Tax Appeals assessing as business income, subject to Kentucky taxation, approximately $58,000,000.00 in income derived from capital gains, interest and foreign royalties for the years 1968 through 1972. None of the specific items in question had anything to do with Corning's business activities in Kentucky. Corning argues that all income earned by a multi-state corporation is not necessarily subject to taxation by Kentucky. It also challenges the assessment on constitutional grounds and on the basis that the Board of Tax Appeals merely adopted the findings of the Department of Revenue rather than making its own independent findings.

## BACKGROUND

The Kentucky tax laws affecting a multi-state corporation doing some business in Kentucky will be specifically quoted subsequently, but generally, they provide a formula for apportioning a share of the total income of the corporation on a basis of the fractional part of the actual business represented by the operations in Kentucky. Such statutory formulas have been generally approved and accepted. *Exxon Corp. v. Wisconsin Dept. of Revenue*, 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980). Theoretically, the concept of taxability assures that 100% of the income of a multi-state business may be taxed by the several states. There are many reasons for having this type of apportionment, but one reason is that it will prevent a multi-state business from avoiding a production of paper income in a state which may levy a high tax by shifting the income to an operation in a state with a very low tax rate. A fraction of all of the company's "business income" is

to be paid to Kentucky after considering the value that the company's property, payroll and sales in Kentucky have in relation to the total value of company property, payroll and sales for the entire multi-state or multi-national operation. The apportionment formula is provided in KRS 141.120(9).

Corning submitted its tax returns for the years 1968 through 1972, from which it omitted as nonbusiness income nearly $58,000,000.00, which would produce in taxes payable to Kentucky approximately $282,000.00. The Department assessed the omitted items, and Corning initiated this litigation. The Kentucky Board of Tax Appeals upheld the assessment, and an appeal was taken to the Franklin Circuit Court.

The Franklin Circuit Court determined that the law no longer requires that taxable net income have an identifiable source within this State. Assessments may now be made on the basis of the formula which properly contemplates an assessment on business income produced from within and without the Commonwealth. The Court went on to find, however, that the Board of Tax Appeals decided the income in question was business income on the basis of how Corning had treated it. The Court concluded that it was no answer to say that the income is so integrated that it cannot be segregated. A determination must be made in accordance with the statutory definition of business income as to whether the income arose from transactions and activities in the regular course of the business of Corning. The court remanded the action to the Board of Tax Appeals for further consideration.

On remand, the Board of Tax Appeals took no new evidence, but considered everything that had been presented in the record and concluded that all of the items were derived from activities in the regular course of the business of Corning Glass. Upon reconsideration by the Franklin Circuit Court, it was determined that the proof taken at the first hearing was sufficient to enable the Board to make a considered judgment of whether the income was business income or nonbusiness income by the statutory definition and regulations of the Department. The findings were determined to be not clearly erroneous, and the decision of the Board was affirmed. The case was thereafter appealed to this Court.

## STATUTES AND REGULATIONS

The applicable statutes and regulations of the Board, that were in effect during the time of this controversy, are as follows:

KRS 141.010(14)(b). "Taxable net income," in the case of corporations having income taxable both within and without this state means "net income" as defined in section (13) of this section and as allocated and apportioned under KRS 141.120, minus federal income tax as defined in subsection (8) of this section;

KRS 141.040. Every corporation organized under the laws of this state, every corporation having its commercial domicile as defined in paragraph (b) of subsection (1) of KRS 141.120 in this state, and every foreign corporation owning or leasing property located in this state or having one or more individuals receiving compensation as defined in paragraph (b) of section (9) of KRS 141.120 in this state, . . . shall pay for each taxable year a tax to be computed by the taxpayer upon the taxable net income of the corporation . . . .

KRS 141.120(1) As used in this section, unless the context requires otherwise:
a) "Business income" means income arising from transactions and activity in the regular course of a trade or business of the taxpayer and includes income from tangible and intangible property if the acquisition, management, or disposition of the property constitutes integral parts of the taxpayer's regular trade or business operations; . . .

(e) "Nonbusiness income" means all income other than business income;

(2) Any corporation having income from business activity which is taxable both within and without this state shall allocate and apportion its net income as provided in this section. . . .

(4) Rents and royalties from real or tangible personal property, capital gains and losses, interest, dividends, or patent or copyright royalties, *to the extent that they constitute nonbusiness income*, shall be allocated as provided in subsections (5) through (8) of this section. (Emphasis added.)

For subsequent clarity, we emphasize at this time that subsections (5) through (8) pertain to situations when income from gains, interest, dividends and royalties have been determined to be nonbusiness income but are nevertheless taxable in Kentucky, because they arose from transactions or activities in Kentucky. If they have been determined to be business income as having been derived through the regular course of business, sections (5) through (8) have no application. They are given separate consideration, but this Court finds no way to interpret their special treatment to mean that income derived from royalties, capital gains or interest are automatically considered as nonbusiness income. One of Corning's primary arguments was that such income was automatically excluded.

■ Our interpretation of the provisions of KRS 141.120 is that the income in question must be determined to be business income or nonbusiness income. In the event certain items are nevertheless declared to be nonbusiness income, they may be taxable in Kentucky if they had their situs in Kentucky or were used in Kentucky. Otherwise, the income remains exempt from taxation.

The types of income questioned by Corning are those that are described in KRS 141.120(5) through (8), including rents and royalties from real and tangible personal property, capital gains and losses from sales of real and personal property, interest income, and patent royalties.

Kentucky's tax regulations, utilized by the Board in reaching its conclusion that the items in question were business income, are found in Income Tax Regulation IC–6–1, § 3(b), (c), and (e). They read:

(b) Gains or losses from the sale, exchange or other disposition of real, tangible or intangible personal property is business income if the property was used by the corporation to produce business income.

(c) Interest income is business income if the intangible which earns the interest arises out of or was created by a business activity of the corporation and when the purpose of acquiring the intangible is directly related to the business activity.

(e) Patent and copyright royalties are business income if the patent or copyright was created or used as an integral part of the corporations's principal business.

## FACTS AND FINDINGS

Corning produces approximately 60,000 items, which can be roughly classified into three categories: (1) consumer products, (2) electrical and electronic products including lighting products, and (3) technical and scientific products. Corning's operations in Kentucky are relatively limited. During the years in question, Corning operated a plant in Harrodsburg manufacturing ophthalmic lenses used in eyeglasses, and a plant in Danville producing fluorescent tubing and some photo-flash tubing. The products were complete and were thereafter sold directly from the Kentucky plant to customers. Because of the direct sales from products manufactured in Kentucky, Corning contends that its income from the Kentucky operations can be readily ascertained and separated from the total of all Corning's income. The Kentucky activities had no connection with, and were not responsible for, the capital gains, foreign royalty and interest income which have been questioned in this action.

The questionable income was derived from several sources. During the years in question, Corning realized capital gains income in the amount of $4,558,744.00 from "know-how sales" to Hungary and Rumania. Corning assisted in the construction and operation of a light bulb plant in Rumania and a television glass plant in Hungary. These activities were a once-in-a-lifetime arrangement. Other capital gains were derived from a sale of a business

making glass panels to fit over fluorescent bulbs which was determined not to fit into the Corning operation; the sale of Corning Glass Ltd., an Australian corporation; sales of government bonds which had been purchased with surplus funds; the sale of a small plant in New Jersey which had been purchased as an investment; and the contribution of shares of a fiberglass company to the employees' pension trust fund and a donation of leasehold property to the pension trust fund. As to the latter item, the property had been previously rented and produced income for the corporation.

The royalty income had been derived from licensing fees for patents and "know-how" involving products not related to those produced in Kentucky. The license fees were paid for by percentages of the net sales from particular products. Corning argues that it is not in the business of developing inventions for sale, but produces them only incidental to its development relating to the manufacture of glass. The royalties were paid to Corning by a Japanese corporation, Asahi Glass Company; a British Corporation, James A. Jobling, Ltd.; a German Corporation, Janaer Glaswerk; Matsuskita Corporation; and by Corning subsidiaries located in Argentina and Brazil.

The interest income had been received as a result of investment of surplus funds pending a decision as to how the funds should ultimately be used in the business. They were received from loans made to subsidiaries, and from investments in short-term securities.

The Board of Tax Appeals specifically found that Corning commingled the income in question with its other business income and used the total income in the regular course of business. Corning deducted all expense items as business expense from the income which they question in this action. Corning treated the questioned income as business income.

As to the income from royalties, the Board found that Corning operates a research and development plant in Corning, New York. Patents acquired from this operation constitute an integral part of the regular course of its business operations. Corning grants permits to others to use the patents for which it receives income in the regular course of its business. The Board concluded that the royalties were derived from transactions and activities in the regular course of business and that they were therefore within the statutory and administrative definition of "business income."

The interest income was received from investments made from funds produced by the business activities derived from Corning's regular course of business. Such interest income was from a business activity of Corning resulting from short-term loans and loans to subsidiaries and related corporations in the regular course of its business. The Board concluded that the evidence disclosed an interdependence between interest income and the business of the taxpayer and was therefore subject to apportionment.

The Board found that the capital gains income was received from the property used by the corporation to produce business income. It consisted of sales involving real, tangible and intangible personal property. The gains from the sales were found to be from the regular course of Corning's trade or business within the statutory and administrative definitions.

LEGAL CONCLUSIONS

■ Someone must make the determination of whether the income arose from transactions and activities in the regular course of business. That duty has been placed on the Kentucky Board of Tax Appeals. We are not to reverse those findings unless they are clearly erroneous and not supported by substantial evidence in the record. *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298 (1972). Of course, we may also need to determine whether or not the Board's order is in conformity with the law based upon the facts as determined by the Board.

The law is quite clear. A multi-state corporation with income from business activity in several states must allocate and

apportion to Kentucky a fraction of its net business income. The law no longer requires that taxable net income have an identifiable source within this state. The apportionment formula has been generally accepted and is a fair allocation of all income which runs afoul of no constitutional safeguard. *Great Lakes Pipeline Co. v. Commissioner of Taxation*, 272 Minn. 403, 138 N.W.2d 612 (1965), Appeal Dismissed, 384 U.S. 718, 86 S.Ct. 1886, 16 L.Ed.2d 881. *See also, Exxon Corp. v. Wisconsin Dept. of Revenue, supra,* and *Mobile Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980).

The activities of a corporation will be considered a single unitary business, if there is evidence to indicate that the operations of its divisions are integrated with, dependent upon, or contribute to each other and the operations of the taxpayer as a whole. *Great Lakes Pipeline Co., supra.* That case also held that the burden of proving income to be nonbusiness income was on the corporate taxpayer. We agree with Corning that not all income is necessarily subject to taxation by Kentucky, but the burden is on Corning to show that the questioned income was not derived from the regular course of business.

Corning also argues that the case of *Square D Co. v. Kentucky Board of Tax Appeals*, Ky., 415 S.W.2d 594 (1967), prohibits the Department of Revenue from taxing separate income of a foreign corporation which was not produced in some recognizable sense by business activities in Kentucky. *Square D, supra,* is helpful in some ways, but it essentially dealt with a statute which defined taxable net income as that which had its source from activities within Kentucky. The new statutes do not make such a distinction. *Square D* is therefore distinguishable and is not controlling in this case.

Corning's final argument is that the case should be reversed because the Board merely adopted an order prepared by the Department of Revenue and made no independent findings of fact of its own. Action of this type has been criticized by this Court

in *Brunson v. Brunson*, Ky.App., 569 S.W.2d 173 (1978), and *Callahan v. Callahan*, Ky. App., 579 S.W.2d 385 (1979). The final order and findings of the Board were clearly prepared by the counsel for the Department of Revenue, but we have no reason to believe that the total contents of the order do not completely and accurately reflect the findings and conclusions of the Board. Although the findings might have been even more specific, we nevertheless conclude that they are adequate and that they are not clearly erroneous. We do not find a reversible error on this point.

The judgment is affirmed.

All concur.