**784**

PETERSON MANUFACTURING CO.
Plaintiff/Appellant,

v.

STATE of Tennessee,
Defendant/Appellee.

Supreme Court of Tennessee,
at Nashville.

Oct. 30, 1989.

W.J. Michael Cody, Atty. Gen. and Reporter, Joe C. Peel, Asst. Atty. Gen., Nashville, for defendant-appellee.

Daniel C. Paulus, Cyrus L. Booker, Dearborn & Ewing, Nashville, for plaintiff-appellant.

## OPINION

O'BRIEN, Justice.

This action was commenced by Peterson Manufacturing Company as a claim for refund of excise and franchise taxes paid for the years 1984, 1985 and 1986, and for review of the denial of a request for a variance of the statutory apportionment formula for calculating the excise and franchise taxes paid by petitioner. The proceeding was initiated before the State of Tennessee Claims Commission and was removed to the Chancery Court for Davidson County pursuant to Sec. 9, Chapter 749, Public Acts of 1986. The matter was tried upon the stipulation of the parties and the deposition testimony of Paul G. Scully and O. Nelson Auer, officers of the corporation. The trial court denied recovery.

Peterson Manufacturing Company is a corporation organized under the laws of Missouri and licensed to do business in Tennessee. In 1968 Peterson organized a subsidiary corporation in Kansas City, Missouri under the name of Mission Plastics, Inc. In 1977 a subsidiary corporation of Mission Plastics, Inc. was formed in Jackson, Tennessee, under the name of Mission Plastics South, Inc. The parent corporation, Peterson Manufacturing Company, was an independent vehicle lighting and mirror manufacturer. The subsidiary corporations were engaged in the process of

injection plastic molding of parts utilized by Peterson and other companies.

In 1977 Rockwell Tools, a business operating in Jackson, Tennessee, was a major customer of Mission Plastics, Inc. of Kansas City. The original purpose for organizing Mission Plastics South was to serve the Rockwell plant. That company was considering going into the injection molding business to supply its own needs and the Kansas City company agreed to put a molding plant in Jackson to continue providing it with parts. This company supplied Rockwell and other individual customers in the southern states while Mission Plastics, Inc. of Kansas City supplied Peterson Manufacturing Company with about one-third (⅓) of its production. The other two-thirds (⅔) were sold to other customers who bought custom injection thermo-plastic molded parts.

For a variety of reasons Mission Plastics South was never a monetary success. Among other things the Company did not develop enough sales to pay all of its operating expenses. In November of 1983 a decision was made by Peterson to merge the three corporations. Mission Plastics, Kansas City, and Mission Plastics South became divisions of Peterson Manufacturing and thereafter were referred to as Mission Plastics North and South respectively. Mission Plastics South continued to operate at a loss. For the fiscal year ending 30 November 1984, Peterson offset against its federal income tax a net operating loss of Mission South of more than $400,000, based on the accounting practices utilized in internal bookkeeping between the parent company and its subsidiary divisions.

The Tennessee Commissioner of Revenue applied a standard apportionment formula for excise taxes, (T.C.A. § 67–4–811) and franchise taxes, (T.C.A. § 67–4–911) in order to determine the portion of Peterson's income attributable to its Tennessee operations for the tax years, ending in 1984, 1985 and 1986. For each of the years in question Peterson requested a deviation from the standard apportionment formula and a computation of the taxes based upon a separate accounting, or, in the alternative, an adjustment of the statutory apportionment formula to eliminate from the equation the property factor prescribed in T.C.A. § 67–4–811 and § 67–4–910.

The issue here is if the Commissioner of Revenue was correct in applying the standard apportionment formula to compute excise and franchise taxes for the years in question and if he properly denied a petition for variance from the apportionment formula.

The plaintiff, citing authorities, insists the initial inquiry must be whether Peterson's operations were multiform or unitary. In *Exxon Corp. v. Wisconsin Department of Revenue*, 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980), *Exxon* corporate organization structure consisted of three parts: Corporate Management, Coordination and Services Management, and Operations Management. Each of these separate levels of management had individual functions, which included exploration and production, refining, and marketing. The company had no exploration, production or refining operations in Wisconsin. The only activity carried on in that State was marketing. Because the company marketed its products in Wisconsin it was required to file state corporate income and franchise tax returns. The returns prepared by *Exxon* were based on separate state accounting methods reflecting only the Wisconsin marketing operation and showed losses for the years in question. No tax was shown as being due. The Wisconsin Department of Revenue audited *Exxon* for those years and concluded the marketing operation was an integral part of a unitary business, therefore *Exxon's* taxable income was determined by application of the State's apportionment formula to the taxpayer's total income. The court noted, "it has long been settled that 'the entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-state aspects of interstate affairs.'" (Citations omitted.) "The Due Process Clause of the Fourteenth Amendment imposes two requirements for such state taxation: (1) a 'minimal connection' or 'nexus' between the in-

terstate activities and the taxing State, and 'a rational relationship between the income attributed to the State and the intrastate values of the enterprise.'" "The nexus is established if the corporation 'avails itself of the substantial privilege of carrying on business' within the state." (Citations omitted.)

The linchpin of apportionability in the field of state income taxation is the unitary-business principle. In accord with this principle, what appellant must show, in order to establish that its ... income is not subject to an apportioned tax ..., is that the income was earned in the course of activities unrelated to the sale of its products in that state. See *Mobil Oil Corp. v. Commissioner of Taxes of Vermont*, 445 U.S. 425, 100 S.Ct. 1223, 1232, 63 L.Ed.2d 510 (1980). Unity of use and management of a business which is scattered through several states may be considered when a State attempts to impose a tax on an apportionment basis ... The enterprise of a corporation which manufactures and sells its manufactured product is ordinarily a unitary business, and all the factors in that enterprise are essential to the realization of profits. See *Butler Brothers v. McColgan*, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942), cited in this case by the plaintiff.

Peterson Manufacturing Company engaged in the manufacture and marketing of vehicle lighting equipment, etc. Mission Plastics North provided a portion of the plastic components utilized in its manufacturing process. Mission Plastics South did not provide any of these plastic components. However, Peterson Manufacturing Company marketed its products in the State of Tennessee and elsewhere, as did Mission Plastics South. In 1983 both of the subsidiary corporations were merged into Peterson Manufacturing Company under the central management and control of its board of directors and officers. Revenues of the parent company were produced in part by each of the subordinate divisions.

The argument that the Tennessee division of the corporation operated independently of Peterson and the North division is of no substance. Although the unit was originally created to function independently, after the merger the two manufacturing divisions of Peterson became an integral part of the parent company operating under a centralized management. The ladder of authority began with the general manager of Mission South on the first rung. He answered to the chief operating officer of Mission North who was under the direct supervision of the Peterson Corporate Management. The management of the three divisions was controlled by Peterson officers. Peterson maintained books and records for the Tennessee facility and handled its banking operation except for a payroll account. Peterson officers consulted and advised the Mission South management in reference to the manufacturing operation and the pricing of its products. Peterson offices in Missouri prepared the tax returns relative to the South division and generally were in complete control except for the general daily manufacturing process. It was in fact a unitary business for tax purposes and the appellant has failed to carry the burden of showing by "clear and cogent evidence" *Butler Bros.*, supra, that the apportioned tax was improperly imposed.

The appellant argues that the commissioner abused his discretion in refusing to permit a variance from apportionment formulas.

T.C.A. § 67-4-812 and § 67-4-911 provide for variation from standard allocation and apportionment provisions if the formulas do not fairly represent the extent of the taxpayers business activity in Tennessee. These code sections permit the taxpayer to petition for permission to calculate its taxes on either a separate accounting basis or an apportionment formula which excludes one or more of the factors comprising the apportionment formula in the statute. In conjunction with these code provisions, Rule 35(c) of the Tennessee Franchise and Excise Tax Rules and Regulations was promulgated and provides:

"Application for relief must be addressed to the Commissioner of Revenue with a filing of a petition, in writing, setting forth the reasons why application of the

statutory allocation and apportionment provisions do not fairly represent the extent of the taxpayers business activity in this State. It must be shown by clear and cogent evidence that peculiar or unusual circumstances exist which would cause application of the said statutory provisions to work a hardship or injustice."

The Tennessee Legislature has adopted an apportionment formula from the Uniform Division of Income for Tax Purposes Act which employs as "objective measures" of the contribution of Tennessee operations to a company's total earnings, a payroll factor, a property factor, and a sales factor. The sum of the three factors is divided by three. The percentage arrived at is the percentage of earnings apportioned to this State. The United States Supreme Court approved such a three-factor formula in *Butler Bros.*, supra. The burden is on the petitioner to establish the facts and circumstances to justify a departure from this statutory formula. The commissioner may exercise reasonable discretion in determining whether facts and circumstances justify departure from the statutory formula in imposing tax on foreign corporations doing business in the State. See *American Bemberg Corp. v. Carson*, 219 S.W.2d 169, 188 Tenn. 263 (1949). Under the evidence in this case we conclude that his action was correct in denying the variance.

■ As an alternative to permitting a variance from the apportionment formula the plaintiff insists the Tennessee Commissioner of Revenue should have excluded the property factor from the formula used. The argument is that the property factor is grossly out of line with the other statutory factors because the property was purchased on a higher cost basis than other property of Peterson's and was not contributing anything to Peterson's net earnings outside of Tennessee.

Peterson Manufacturing through its subsidiary Mission North, originally agreed to construct the plant in Jackson, Tennessee to serve customers there. It proved to be a poor business venture. Eventually the sep-arate corporate entity was abolished and Mission South became a division of Peterson. The parent corporation utilized the tax loss for a period of years and ultimately decided that it was impractical to continue the operation because it would have taken a massive infusion of capital to modernize the plant. The business decision was made to close it down. The property was sold. When the request to exclude the property factor from the corporation's apportionment formula was made the commissioner found for the years in question Peterson's property factor of the apportionment formula was 12.61%, the payroll and sales factors were 7.90% and 4.91% respectively. It was concluded that these ratios appeared to be representative of the corporation's business activities. The relief requested was denied.

The trial court found that the evidence in the case did not support plaintiff's contention that the corporate structure of Peterson Manufacturing Company was multiform as opposed to unitary and that no deviation from the standard apportionment formula in assessing taxes was warranted. He also found that plaintiff had failed to meet the burden of showing that the formula employed by the Commissioner of Revenue did not fairly represent Peterson's business activities in Tennessee. He denied relief on the request to exclude the property factor from the standard apportionment formula.

We have thoroughly reviewed this record in accordance with T.R.A.P. 13(d) and for the reasons set forth in this opinion we concur fully with the findings of the trial court. The judgment below is affirmed in all respects. The costs of these proceedings are adjudged against the appellant.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ., concur.