**FEDERATED STORES REALTY, INC., Plaintiff–Appellant,**

v.

**Joe B. HUDDLESTON, Commissioner of Revenue of the State of Tennessee and successor to Charles E. Cardwell, Defendant–Appellee.**

Supreme Court of Tennessee,
at Nashville.

May 18, 1992.

Rehearing Denied May 3, 1993.

Joseph W. Gibbs, Patricia Head Moskal, Boult, Cummings, Conners & Berry, Nashville, for plaintiff-appellant.

Charles W. Burson, Atty. Gen. & Reporter, William E. Young, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

REID, Chief Justice.

This case presents an appeal by Federated Stores Realty, Inc. (Federated) from the judgment of the Chancery Court of Davidson County denying Federated's request for refund of corporate franchise and excise taxes for its four fiscal years ending January 31, 1984 through 1987, the assessment period.

### I

Federated is a Delaware corporation with its principal place of business in Cincinnati, Ohio. During the assessment period and at all times relevant to the issues in this case, it was engaged in the business of developing, leasing, and managing real estate in various parts of the United States to be used as retail shopping centers. Federated was a wholly-owned subsidiary of parent corporation Federated Department Stores, Inc., also a Delaware corporation with its principal place of business in Cincinnati, Ohio. The parent corporation was engaged in the business of operating retail department stores, including Bloomingdale's, Abraham & Straus, Goldsmith's, Rich's, and the Boston store. Some of the shopping centers were wholly owned by Federated, others were owned by partnerships or joint ventures in which Federated was a principal. One retail store operated by the parent corporation was the anchor tenant in each of the shopping centers that Federated owned in whole or part.

The only property in Tennessee in which Federated owned any interest was Hickory Ridge Mall, which was owned by Hickory Ridge Joint Venture, a joint venture in which Federated owned a 50 percent interest. Hickory Ridge Mall was completed in 1981 and was sold in 1986.

Federated was incorporated in 1973. It opened its first shopping center in 1976 and opened 11 more centers between 1976 and 1982. In 1982, it owned in whole or in part 13 completed centers and had several centers under development. Federated Department Stores, Inc., the parent corporation, was a publicly-held corporation. The price of its stock in the financial market was of great importance to its management. In 1980, management of the parent corporation became concerned that the value of the real estate owned and developed by Federated was not reflected adequately in the price at which the parent corporation's stock was traded. Consequently, the parent corporation decided to test the effect of this ownership on the price of its stock by causing Federated to sell two shopping centers. Apparently, the sale of those two centers in 1982 confirmed management's view that the price of the parent corporation's stock was not affected by its subsidiary's ownership of the shopping center properties. The result was that a plan was developed for the sale of all of the shopping center properties.

Pursuant to that plan, Federated consummated in 1983 the sale to one purchaser of all centers under development, and it terminated the employment of all of its employees, except one who transferred to the parent corporation. Upon that sale, Federated ceased all development and management activities. It sold all 13 centers that it owned in whole or in part, selling six in 1983, one in 1984, two in 1985, three in 1986, and the final center in 1988. The annual reports of the parent corporation, which were filed, as required, with the Federal Securities Exchange Commission, reflected the plan of liquidation and the sales made pursuant to that plan. The proceeds from the sales were used to pay the expenses of the sales, federal and state taxes, long-term debts, and other obligations. The balance of the proceeds was paid to the parent corporation as dividends. None of the proceeds was reinvested in shopping centers, and Federated acquired no additional centers.

The property occupied and used by the parent corporation as its corporate headquarters was transferred to Federated in 1986 to enable Federated to defer for federal income tax purposes the recognition of income received from the sale of the centers. Federated continued to own several parcels of unimproved realty and various items of tangible personal property and

certain notes, accounts, and other receivables.

The Department of Revenue assessed franchise and excise taxes in the total amount of $2,038,548 for the assessment period. Federated paid the taxes assessed and filed suit for a full refund. The chancellor resolved all of the issues in favor of the Department, and the case is before this Court on direct appeal.

## II

Franchise and excise taxes are levied upon corporations doing business in Tennessee. These taxes, though separate and distinct, are imposed upon the privilege of doing business as a corporation in this state. *See Omnicon, Inc. v. King*, 688 S.W.2d 818 (Tenn.1985). Statutes imposing these taxes provide that each shall be paid "in addition to all other taxes." T.C.A. § 67–4–806, –903. The excise tax is levied at the rate of six percent of net earnings, T.C.A. § 67–4–801 to –822, and the franchise tax is levied at the rate of 25 cents per $100 of issued and outstanding stock, surplus, and undivided profits, but not less than the actual value of the property owned or used in Tennessee. T.C.A. § 67–4–901 to –921. This Court has recognized that the "Legislature clearly intends that these taxes be taken in tandem and construed together as one scheme of taxation." *First Am. Nat'l Bank v. Olsen*, 751 S.W.2d 417, 421 (Tenn.1987).

Tennessee's excise tax on corporate earnings was enacted in 1976 and derived from the Uniform Division of Income for Tax Purposes Act (UDITPA), a model act prepared by the National Conference of Commissioners on Uniform State Laws. *General Care Corp. v. Olsen*, 705 S.W.2d 642, 644 (Tenn.1986). As recognized by this Court, the purpose of the model Act was to provide a uniform method for attributing to a state, for purposes of income taxation, a portion of the total earnings from business activity that is taxable both within and without that state. *Holiday Inns, Inc. v. Olsen*, 692 S.W.2d 850, 852 (Tenn.1985). The Act theoretically assures that 100 percent of the income of a multi-state business will be taxed by the several states in which the company does business. *Corning Glass Works v. Dep't of Revenue*, 616 S.W.2d 789, 790 (Ky.App.1981). The Act, as enacted in Tennessee, seeks to tax the income of a corporation doing business in more than one state by establishing that portion of the corporation's income attributable to the corporation's business activities within Tennessee. The statute essentially establishes two methods by which corporate income will be divided for excise tax purposes: allocation and apportionment. T.C.A. § 67–4–809. Under T.C.A. § 67–4–809, the determination of whether income is "allocated" to Tennessee or another jurisdiction or "apportioned" among all jurisdictions where the corporation does business depends upon whether the income is classified as "business earnings" or "non-business earnings." T.C.A. § 67–4–804(a) defines those terms as follows:

(1) "Business earnings" means earnings arising from transactions and activity in the regular course of the taxpayer's trade or business and includes earnings from tangible and intangible property if the acquisition, management and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations;

.    .    .    .    .

(5) "Nonbusiness earnings" means all earnings other than business earnings;

. . . .

Income classified as "business earnings" is "apportioned" under T.C.A. § 67–4–811 among the various states in which the taxpayer does business. The apportionment is made according to a formula that considers the corporation's property, payroll, and sales. Income classified as "non-business earnings" is traced to its source in a particular state and "allocated" to that state under T.C.A. § 67–4–810. *See General Care Corp. v. Olsen*, 705 S.W.2d at 644.

The Commissioner in this case classified as business earnings to be apportioned pursuant to T.C.A. § 67–4–811 the gains realized from the sales of all the real property sold by Federated during the as-

sessment period. Consequently, the first issue to be resolved is whether the gains realized from those sales were "business earnings."

This Court has stated that in interpreting the provisions of Tennessee's excise tax constructions given to the UDITPA formula by other jurisdictions will be seriously considered so as to "maintain conformity when they are in harmony with the spirit of the statute and do not antagonize public policy of this state." *Holiday Inns, Inc. v. Olsen,* 692 S.W.2d at 853. In so holding, this Court has recognized that other jurisdictions operating under the UDITPA have adopted two somewhat different tests in determining whether income is classified as business or non-business. Under the "transactional test," which emphasizes the first clause of the statutory definition of business income, "earnings arising from transactions and activity in the regular course of the taxpayer's trade or business," income is classified as business income if it is attributable to a type of business transaction in which a taxpayer regularly engages. Relevant inquiries include, but are not limited to, the frequency and regularity of similar transactions, the former practices of the taxpayer, and the taxpayer's subsequent use of the income. The "functional test," in contrast, focuses on the second part of the statutory definition of business earnings, "earnings from tangible and intangible property if the acquisition, management and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." Thus gains from the disposition of property are considered business income under this definition if the property disposed of produced business income while it was owned by the taxpayer. *General Care Corp. v. Olsen,* 705 S.W.2d at 645.

The Court has concluded that Tennessee's excise tax statute was not intended to create alternative tests and that its language "clearly indicates that the disposition, as well as the acquisition and management of property, must be an integral part of the taxpayer's regular trade or business operations in order to produce business earnings." *General Care Corp. v. Olsen,*

705 S.W.2d at 646. This Court has thus focused upon the entire definition of the term "business earnings" under Tennessee's statute and has examined the specific facts of each case presented to determine whether income should be characterized as business or non-business earnings. *See General Care Corp. v. Olsen,* 705 S.W.2d at 647–648.

In *General Care Corp. v. Olsen,* the taxpayer corporation treated as non-business earnings the gain it had realized upon being merged with and into a subsidiary of Hospital Corporation of America. The Court, approving the treatment by the taxpayer, described the business operations as follows:

> During its existence the original General Care built four nursing homes and seven hospitals. It sold two of the nursing homes to private individuals, retained ownership of one, and converted one into a hospital. Four subsidiaries of the original General Care owned and operated the eight hospitals, five of which were located in Tennessee.... Neither the original General Care nor any of its subsidiaries ever sold a hospital outright to an unrelated third party, although minority interests ranging from 6½ to 49½ of the hospitals' real and personal property were sold to physicians on the staffs of seven of the hospitals. In 1980, the original General Care agreed to be acquired by Hospital Corporation of America [HCA]. To accomplish this, the original General Care caused its four hospital management subsidiaries to be liquidated and their assets distributed to it as a parent corporation. HCA purchased the interests of the original General Care shareholders for cash, and the original General Care was merged with a subsidiary of HCA known as HCA Acquisitions. HCA Acquisitions, the surviving corporation, then changed its name to General Care Corporation. This latter General Care succeeded to all the assets and liabilities of the original General Care and its subsidiaries, and is the plaintiff herein.

705 S.W.2d at 643 (footnote omitted). The Court concluded that the gain realized on the merger transaction (which was treated for federal income tax purposes, and therefore for Tennessee excise tax purposes as well, as a sale by the original General Care of all of its assets, followed by its complete liquidation) constituted non-business earnings. In arriving at this conclusion, the Court described the transactional test as follows:

> The transactional test is rooted in the statutory phrase, "earnings arising from transactions and activity in the *regular course* of the taxpayer's trade or business." .... One court has held that the phrase refers to "[b]usiness deals and the performance of a specific function in the normal, typical, customary, accustomed policy or procedure of the taxpayer's trade or business."

705 S.W.2d at 644 (quoting *Champion Int'l Corp. v. Bureau of Revenue*, 88 N.M. 411, 540 P.2d 1300, 1303 (N.M.Ct.App.1975)) (emphasis added by court).

Continuing its discussion of the transactional test, the Court stated:

> Thus, under the transactional test, the "controlling factor by which business income [is identified] is the nature of the particular transaction giving rise to the income." *Western Natural Gas Co. v. McDonald*, 202 Kan. 98, 446 P.2d 781, 783 (1968). The frequency and regularity of similar transactions and the former practices of the business are pertinent considerations.
>
> Another relevant inquiry concerns the taxpayer's subsequent use of the income. Under the transactional test, earnings held for use in the regular course of ongoing business operations or expended to acquire assets to be used in the regular course of future business activities, have been held to be properly apportionable as business income.

705 S.W.2d at 644 (citations omitted).

The Court also discussed what is known as the "functional test," distinguishing this alternative test from the transactional test, as follows:

> Under the transactional test, the use or function of an asset in the taxpayer's business is not a determinative criterion, *Western Natural Gas*, 446 P.2d at 783, but under the functional test, the income from the sale of an asset will be considered business income if the asset produced business income while it was owned by the taxpayer. *District of Columbia v. Pierce Assocs., Inc.*, 462 A.2d 1129, 1131 (D.C.App.1983) illustrates: "If the property had an integral function in the taxpayer's unitary business, its income properly can be apportioned and taxed as business income, even though the transaction itself does not reflect the taxpayer's normal trade or business [footnote omitted]." Under the functional test, "the extraordinary nature or the infrequency of [a] transaction ... is irrelevant," [*Atlantic Richfield Co. v. State*, [198 Colo. 413,] 601 P.2d 628, 631 (1979)], and so no significance is attached to liquidation.

705 S.W.2d at 645 (footnote omitted by court). The Court, declining to adopt the functional test, stated:

> We find the Commissioner's position that the "disposition" of property need not be within the scope of the taxpayer's regular business operations in order to give rise to business income contrary to the plain language of the statute.

705 S.W.2d at 646.

This Court in *General Care Corp. v. Olsen* relied heavily upon the decision of the Court of Appeals of New Mexico in *McVean & Barlow, Inc. v. New Mexico Bureau of Revenue*, 88 N.M. 521, 543 P.2d 489 (App.1974), and the decision of the Supreme Court of Kansas in *W. Natural Gas Co. v. McDonald*, 202 Kan. 98, 446 P.2d 781 (1968), stating, "We find the reasoning underlying these cases to be persuasive." 705 S.W.2d at 647. The Court described the factual setting and the court's conclusion in *McVean & Barlow, Inc. v. New Mexico Bureau of Revenue*, as follows:

> [T]he taxpayer was a corporation engaged in the business of laying pipeline of two varieties, small diameter (little-inch work) and large diameter (big-inch

work). In 1973, the corporation underwent a major reorganization and liquidated the big-inch pipeline business. The pipeline equipment was sold by auction, and the proceeds derived from the sale were held to be non-business income. The Court noted that the liquidation transaction in question was a very unusual transaction that would occur only once in a company's history, and held:

> [T]axpayer was not in the business of buying and selling pipeline equipment, and, in fact, the transaction in question was a partial liquidation of taxpayer's business and a total liquidation of taxpayer's big-inch business. The sale of equipment did not constitute an integral part of the regular trade or business operations of the taxpayer. This sale contemplated a cessation of taxpayer's business.

705 S.W.2d at 647 (quoting 543 P.2d at 492).

The gain realized by Federated upon its sales of regional shopping centers do not constitute "business earnings" under the transactional test adopted by the Court in *General Care Corporation v. Olsen*, unless the dispositions of such property were "transactions and activity in the regular course of the taxpayer's trade or business." In an attempt to prevail on this point, the Department of Revenue makes two arguments. The first is essentially the same as an argument that was made by the Department of Revenue and rejected by the Court in *General Care Corp. v. Olsen*, in which the Court stated:

> The Commissioner would have us hold that the disposition of property is integral to the taxpayer's "regular" trade or business operations if such a transaction merely arises out of the taxpayer's business operations, however sporadically.

705 S.W.2d at 647–48. The Court rejected that argument, and found that the word "regular" in this context means:

> "[S]teady or uniform in course, practice, or occurrence, not subject to unexplained or irrational variations; steadily pursued, ... returning, recurring, or

received at stated, fixed or uniform intervals."

705 S.W.2d at 648 (quoting Webster's New International Dictionary).

Central to the second argument made by the Department in this case is the outcome-oriented procedure of defining the taxpayer's "trade or business" in such an expansive fashion that virtually every transaction could be found to be within the "regular course" of that "trade or business." Thus, the Department characterizes the trade or business of the plaintiff during the assessment period as "buying and selling real estate." Had the Department's approach for characterizing a corporation's "trade or business" been employed, the taxpayer in *General Care Corp. v. Olsen*, could have been found to be in a trade or business that included selling interests in hospitals' real and personal property. Likewise, the result would have been different had the court in *McVean & Barlow, Inc. v. New Mexico Bureau of Revenue*, 543 P.2d at 489, chosen to characterize the taxpayer's business, instead of as "laying pipeline of two varieties," as selling items of tangible personal property. This approach to defining a corporation's "trade or business" is not consistent with the Court's interpretation of the statute and is not conducive to the establishment of a sound tax policy.

The Department contends that the taxpayer's sales of the shopping centers must be found to be a regular part of its trade or business because its corporate existence has not ceased. This contention is contrary to the New Mexico court's holding this Court found to be persuasive in *McVean & Barlow v. New Mexico Bureau of Revenue*, in which the taxpayer liquidated its business of laying big-inch pipeline, but continued its corporate existence and its business of laying little-inch pipeline.

Conceptually supportive of the finding that a disposition of property need not be part of a transaction whereby a corporation ceases to exist to be outside the "regular course of a taxpayer's trade or business" is the treatment afforded, for federal income tax purposes, distributions from corpora-

tions under Section 302(b)(4) of the Internal Revenue Code. Under that provision, a distribution "in partial liquidation of the distributing corporation" can qualify, with respect to the shareholders, for the same favorable federal income treatment that applies in the case of a corporation's ceasing to exist and completely liquidating, rather than being treated as ordinary income generated from regular business operations. Treatment as a "partial liquidation" is not adversely affected if the distributing corporation continues to conduct one or more other trades or businesses.

Like the taxpayer in *General Care Corp. v. Olsen*, Federated did not use the proceeds of liquidation of its interests in regional shopping centers to acquire new assets for use in that business. Under the transactional test, this use of proceeds is a factor that indicates that the income derived from such liquidation should be classified as non-business income.

Under the facts and circumstances of this case, the taxpayer's trade or business during the assessment period can fairly and accurately be described as developing, leasing, and managing regional shopping centers. The sales of those centers pursuant to the corporation's decision to discontinue the business of developing, leasing, and managing shopping centers was not in the regular course of business. It follows that the gains from such sales were for excise tax purposes non-business earnings.

### III

■ The second issue presented is whether the real and tangible personal property owned by Hickory Ridge Joint Venture, the compensation paid by that joint venture and its sales were properly taken into account by the Commissioner in apportioning Federated's business earnings. A joint venture is governed by the rules applicable to a partnership. *Garland v. Seaboard Coast Line Railroad Co.*, 658 S.W.2d 528, 534 (Tenn.1983). *See also Garner v. Maxwell*, 50 Tenn.App. 157, 164–66, 360 S.W.2d 64 (1962).

Prior to the 1989 amendment, the statutory formulae for the apportionment of franchise and excise taxes did not specifically provide for the inclusion of the corporate taxpayer's interest in partnership property. Sections 67–4–811(b) and § 67–4–910(b) (1976), T.C.A., describe the property component of the formulae as "the taxpayer's real and tangible personal property." There was no provision in those statutes for the inclusion in the property, payroll, or sales factors of a corporate partner's interest in a partnership or partnership property. In 1989, the excise tax apportionment formula was amended to include a corporate partner's share of specific partnership property, compensation paid by the partnership, and sales made by the partnership. T.C.A. § 67–4–811(b)(2), (e)(2), and (g)(2) (1989). At the same time, the franchise tax apportionment formula was amended to include a corporate partner's share of specific partnership property and compensation paid by the partnership. T.C.A. § 67–4–910(b)(2) and (e)(3) (1989). Those amendments, enacted after the assessment period, are not expressly applicable to the assessments made in this case.

■ This Court heretofore has not considered whether a corporate partner's interest in partnership property is includable in the formula for apportioning the corporation's earnings for excise tax purposes or the standard formula for apportioning its capital stock, surplus, and undivided profits for franchise tax purposes. The Court has considered that issue with regard to the minimum franchise tax base provided for in T.C.A. § 67–4–906(a)(1) (1976). In *Tollett v. Franklin Equities, Inc.*, 586 S.W.2d 96 (1979), the question before the Court was whether the minimum franchise tax base stated in T.C.A. § 67–4–906 included a corporate partner's interest in a partnership. T.C.A. § 67–4–906(a)(1) (1976) provided as follows:

The measure of the tax hereby imposed shall in no case be less than the actual value of the property owned, or property used, in Tennessee.

In that case, the Court rejected the contention that real and tangible personal property owned by a partnership is includable for that purpose. The Court stated:

[The Commissioner of Revenue] insists, however, that in the present case, through some sort of imputation or "attribution," outright ownership of the real estate and tangible personal property of the partnership should be ascribed to the corporate taxpayer. Neither statutory authority nor any evidentiary basis for this contention has been demonstrated, and that aspect of appellant's assignment of error is overruled.

Nevertheless, the taxpayer's partnership interest is "property," albeit intangible, and there is nothing in the statute since its 1963 revision which excludes valuable intangible assets or property rights such as this from the franchise tax measure.

586 S.W.2d at 98. The Court held that the corporation's interest in the partnership, as distinguished from the property owned by the partnership, was "property" includable in the franchise tax measure. 586 S.W.2d at 98.

In *Omnicon, Inc. v. King*, 688 S.W.2d 818 (Tenn.1985), the Court determined that the value of a partnership interest that should be included in a corporate partner's minimum franchise tax base under T.C.A. § 67–4–906 is the corporation's share of the net worth of the partnership, rather than the corporation's share of the book value of the underlying partnership assets, the difference being that a partnership's net worth is determined after its liabilities are subtracted. The Court reiterated its holding in *Tollett v. Franklin Equities, Inc.*, stating as follows:

> In *Franklin Equities*, we expressly rejected the Commissioner's argument that "through some sort imputation or 'attribution,' outright ownership of the real estate and tangible personal property of the partnership should be ascribed to corporate taxpayer." 586 S.W.2d at 98. The Commissioner's present attempt to value the taxpayers' property as 50% of the book value of the partnership's property is, in substance if not form, an attempt to attribute ownership of the property to the taxpayers. Again, as in *Franklin Equities*, we find no statutory

or evidentiary basis for the Commissioner's position and therefore we reject it.

688 S.W.2d at 820.

These cases do not support but, in fact, undermine the Department's position in the case before this Court because the property factor in T.C.A. §§ 67–4–811 and 67–4–910, during the assessment period, was described as "real and tangible personal property" rather than only "property," which the Court held included a partner's interest in a partnership. The chancellor misconstrued the holding in *Tollett v. Franklin Equities, Inc.* He erroneously concluded that the property, payroll, and sales of Hickory Ridge Joint Venture should be attributed to Federated. Under this Court's holdings in *Tollett v. Franklin Equities, Inc.* and *Omnicon, Inc. v. King*, the property, payroll, and sales of Hickory Ridge Joint Venture cannot be attributed to Federated under T.C.A. §§ 67–4–811 and 67–4–910.

However, under the circumstances of this case, the property, payroll, and sales of Hickory Ridge Joint Venture can be taken into account in apportioning Federated's business earnings and franchise tax base. Sections 67–4–812 and 67–4–911, T.C.A., grant the Commissioner the authority to make variations from the standard apportionment provisions when the respective statutory formula does not fairly represent the extent of the taxpayer's business activity in Tennessee. *See e.g., Peterson Mfg. Co. v. State*, 779 S.W.2d 784, 786–787 (Tenn.1989); *S. Coach Lines, Inc. v. McCanless*, 191 Tenn. 634, 638, 235 S.W.2d 804 (1951); *Am. Bemberg Corp. v. Carson*, 188 Tenn. 263, 268–271, 219 S.W.2d 169 (1949). *See also Howard Cotton Co. v. Olsen*, 675 S.W.2d 154, 162–165 (Tenn.1984) (Harbison, J., concurring). Section 67–4–812, T.C.A., provides, in pertinent part, as follows:

(a) If the allocation and apportionment provisions of this part do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the commissioner may require, in respect to all or any part

of the taxpayer's business activity, if reasonable:

.    .    .    .    .

(3) the inclusion of one (1) or more additional factors which will fairly represent the taxpayer's business activity in this state; or

(4) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's earnings.

Section 67–4–911, T.C.A., provides, in pertinent part:

(a) If the apportionment provisions of this part do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the commissioner may require, in respect to all or part of the taxpayer's business activity, if reasonable:

.    .    .    .    .

(3) the inclusion of one (1) or more additional factors which will fairly represent the taxpayer's business activity in this state; or

(4) The employment of any other method to effectuate an equitable apportionment of the taxpayer's capital.

With respect to the foregoing statutory provisions, the Court, in *Peterson Mfg. Co. v. State*, 779 S.W.2d at 784, stated as follows:

The commissioner may exercise reasonable discretion in determining whether facts or circumstances justify departure from the statutory formula in imposing tax on foreign corporations doing business in the State.

779 S.W.2d 784, at 787.

A variance in this case is entirely appropriate since the result contemplated by Federated clearly does not fairly represent the extent of Federated's business activity in this state during the assessment period. The failure to consider the payroll, property, and sales of the joint venture in Federated's apportionment factors during the assessment period results, according to Federated, in its paying no excise tax and $240 in franchise tax, while it earned profits in excess of $13,000,000 during that period as the result of its ownership interest in the joint venture.

A similar situation was presented in *Homart Dev. Co. v. Norberg*, 529 A.2d 115 (R.I.1987). In that case the taxpayer also was engaged in the development and operation of shopping centers both inside and outside the state of Rhode Island. The taxpayer also owned partnership interests in several partnerships engaged in similar developmental and operational enterprises. The taxpayer owned only one shopping center property located in Rhode Island. Construing statutes similar to the Tennessee statutes applicable to the case before this Court, the Rhode Island court found that pursuant to the apportionment statute the partnership's property, payroll, and receipt factors could not be attributed to the taxpayer since the partnerships were separate entities. However, the court also found that the application of the statutory apportionment formula "would result in a manifestly inherent distortion of the amount of business activity conducted in this state by the subject taxpayer," which required the utilization of a statute similar to T.C.A. §§ 67–4–812 and 67–4–911. 529 A.2d at 120.

Federated insists that a finding that the apportionment statute does not fairly represent the extent of the taxpayer's business activity in this state and the use of a different formula would violate principles of fairness and procedural due process. To hold otherwise would constitute a gross unfairness to the state. The payment of only $240 in taxes does not fairly represent the extent of the taxpayer's business activity in this state during the assessment period in which the taxpayer earned in excess of $13,000,000 in profits. Federated cites no authority for its insistence regarding due process.

Variation by the Commissioner from the standard apportionment formulae was authorized by the applicable statutes, and the method utilized fairly represents the extent of Federated's business in Tennessee during the assessment period.

## IV

Federated assigns as error the admitting into evidence of the Multistate Tax Commission Corporate Income Tax Audit Procedure Guideline Manual on the grounds that it was not relevant, is hearsay, and was not properly authenticated. This manual is published by the Multistate Tax Commission, which is composed of the revenue departments of various state governments. The Tennessee Department of Revenue is an associate member of the Multistate Tax Commission. The document was admitted into evidence to show that the Department of Revenue and other state revenue departments take the position that the property, payroll, and sales of partnerships in which a corporation is a partner should be taken into account when making apportionments in determining such corporations' franchise and excise tax liabilities. The nature and purpose of the manual was stated by the Executive Assistant to the Director of the Franchise and of the Excise Tax Division of the Department of Revenue.

This document was admissible under Rule 803(8), Tennessee Rules of Evidence (T.R.E.), and was properly authenticated under Rule 901(b)(1), T.R.E.

## V

The judgment of the trial court that gains from sales of the real property were "business earnings" is reversed, and those gains are declared to be "non-business earnings" within the meaning of the applicable statute. The judgment of the trial court taking into account the property, payroll, and sales of Hickory Ridge Joint Venture for the purpose of apportioning Federated's earnings and its franchise tax base was permitted by the statutes authorizing variation from the standard apportionment formulae and, on that basis, is affirmed. Inasmuch as each party has prevailed on one issue there is no award of attorneys' fees or expenses of litigation otherwise awarded under T.C.A. § 67–1–1803(d).

The case is remanded to the chancery court to allow the parties, pursuant to their stipulation, to calculate the amount of the refund due Federated, and the costs are assessed one-half to each party.

DROWOTA, O'BRIEN, DAUGHTREY, and ANDERSON, JJ., concur.

## ORDER ON PETITION TO REHEAR

The Commissioner insists in the petition to rehear that the Court has overlooked or misapprehended material facts and misconstrued the controlling statute. The petition asserts that the definition of "business earnings" adopted by the Court is overly restrictive, unwarranted by the statute, inconsistent with the interpretation of the same provision by other state courts, and "could ultimately impact a significant amount of revenue" collected by the State. Nevertheless, the petition is only a restatement of the State's original argument.

The Commissioner's position is that the gains on sales made by the taxpayer are "earnings arising from transactions or activity in the regular course of the taxpayer's business," and are therefore "business earnings" subject to allocation; and further, "business earnings," within the meaning of the statute, include gains on transactions which meet either the transactional test or the functional test developed by court decisions.

As stated in the opinion, the taxpayer's business could be described in such expansive terms that almost any transaction would be within the regular course of the taxpayer's business. However, it appears from the record that the taxpayer's regular business was, as stated in the opinion, "developing, leasing, and managing regional shopping centers." Federated's primary business purpose was to provide store facilities for its parent company's anchor store in each shopping center. Upon the sale of the shopping center properties, facilities needed by the parent company were leased. Consequently, the transactions under review were outside the company's regular business activity according to the transactional test adopted by the Court in *General Care Corporation v. Olsen,* 705 S.W.2d 642 (Tenn.1986).

In support of the contention that the Court's construction of "business earnings" impairs "the uniformity of application of UDITPA among Tennessee and its sister jurisdictions," the Commissioner refers the Court to several decisions in other jurisdictions, in which the transactions under consideration were found to produce "business earnings." The Commissioner insists that the construction made by this Court "creates uncertainty in the administration and collection of Tennessee's excise taxes." The decisions relied upon by the Commissioner reinforce the point made in the opinion—the statute is subject to at least two constructions. However, any uncertainty with regard to the definition of "business earnings" in Tennessee was resolved in 1986 when this Court decided *General Care v. Olsen, supra.* The opinion in the case before the Court, and also in *Union Carbide Corporation v. Huddleston,* 1993 WL 137555, released this date, follow *General Care* meticulously. The Commissioner's extensive memorandum in support of the petition to rehear does not insist the Court departed from *General Care* but relies entirely on decisions from other jurisdictions. In fact, the memorandum does not mention the holding of this Court in *General Care.*

If the Court's construction of the statute creates uncertainty in the administration and collection of taxes, as asserted by the Commissioner though not shown in the record, that uncertainty has existed since 1986. There has been ample time within which to amend the statute to eliminate any uncertainty or unfairness to Tennessee.

The petition to rehear is denied.

DROWOTA, O'BRIEN, DAUGHTREY, and ANDERSON, JJ., concur.