HOMART DEVELOPMENT CO.

v.

John H. NORBERG, Tax Administrator.

No. 85–173–M.P.

Supreme Court of Rhode Island.

July 9, 1987.

Gerald John Petros, Hans P. Olsen, Hinckley, Allen, Tobin & Silverstein, Providence, for plaintiff.

Marcia McGair Ippolito, Chief Legal Officer, Rhode Island Div. of Taxation, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before the court on a petition for certiorari filed by John H. Norberg,[1] Tax Administrator of the State of Rhode Island, to seek review of a January 30, 1985 District Court decision that reversed a prior tax administrative decision that had denied Homart Development Company's request for a refund concerning the fiscal years ending January 31, 1976, 1977 and 1978 and had affirmed the assessment of additional taxes for the fiscal years ending January 31, 1979, 1980 and 1981.[2]

Homart Development Company (Homart) is a Delaware corporation with its commercial domicile and headquarters located in Chicago, Illinois. Homart, the taxpayer in this suit, is engaged in the development and operation of shopping centers both inside and outside the State of Rhode Island. Homart is also a general partner in several different partnerships that engage in substantially similar developmental and operational enterprises. None of these partnerships has conducted business in Rhode Island during the fiscal years in question in this case. Homart's only business activity conducted in Rhode Island is the ownership and operation of a portion of Midland Mall in Warwick, Rhode Island.[3]

At the heart of this matter is the application of the Rhode Island business corporation tax statute by which the Division of

1. A motion for substitution of party defendant was filed by the respondent, R. Gary Clark, to reflect his status as present tax administrator since the retirement of John H. Norberg. Clark has been tax administrator since January 1, 1985.

2. The District Court decision specifically referred to only the denial of the request for refund for the fiscal years ending on January 31, 1976, 1977 and 1978, although the complaint reflects that both the denial of a refund for the fiscal years 1976–1978 and the affirmance of the assessment of additional taxes for the fiscal years ending January 31, 1979, 1980 and 1981

were appealed. The rationale relied upon by the hearing officer in the October 22, 1982 final decision was dispositive of the legal issues concerning all six years in question.

The parties have agreed, by stipulation dated April 5, 1985, that the District Court decision would govern all six years in question.

We granted certiorari pursuant to the tax administrator's petition for writ of certiorari covering all six fiscal years.

3. Midland Mall's name has since been changed to Rhode Island Mall, although that fact in no way affects the issues or decision in this case.

Taxation will assess the business taxes of a nondomiciliary corporation that conducts some of its business activity in Rhode Island, through the use of a formulary equation, to apportion that amount of a corporation's entire net income that would be taxable by this state. This is done by multiplying the entire corporate net income by a ratio arrived at by taking the arithmetical mean of three fractions representing property, payroll, and receipt factors indicative of "taxpayer's" business activity conducted in state over "taxpayer's" business activity conducted everywhere. General Laws 1956 (1970 Reenactment) § 44–11–14, as amended by P.L.1975, ch. 188, art. 1, § 1, states:

> "Allocation of income from business partially within state.—In the case of a taxpayer deriving its income from sources both within and without this state or engaging in any activities or transactions both within and without this state for the purpose of profit or gain, its net income shall be apportioned to this state by means of an allocation fraction to be computed as a simple arithmetical mean of three (3) fractions:
>
> (1) The first of these fractions shall represent that part held or owned within this state of the average net book value of the total tangible property (real estate and tangible personal property) held or owned by the taxpayer during the taxable year, without deduction on account of any encumbrance thereon;
>
> (2) The second fraction shall represent that part of the taxpayers's total gross receipts from sales or other sources during the taxable year which is attributable to the taxpayer's activities or transactions within this state during the taxable year; meaning and including within such part, as being thus attributable, receipts from:
>
> (A) sales of its tangible personal property (inventory sold in the ordinary course of business) where shipments are made to points within this state.
>
> (B) services performed within the state.
>
> (C) rentals from property situated within the state.
>
> (D) the sale of real and tangible personal property, other than inventory sold in the ordinary course of business as described in (A) above, or other capital assets located in the state, and
>
> (E) all other business receipts earned within the state.
>
> (F) rentals from property situated within the state.
>
> (G) the sale of real and tangible personal property or other capital assets located in the state, and
>
> (H) all other business receipts earned within the state.
>
> (3) The third fraction shall represent that part of the total wages, salaries, and other compensation to officers, employees, and agents paid or incurred by the taxpayer during the taxable year which is attributable to services performed in connection with the taxpayer's activities or transactions within this state during the taxable year." [4]

Mathematically, § 44–11–14 can be represented as follows:

> Although the terms "apportionment" and "allocation" have been used interchangeably, increasingly they are being distinguished so that "allocation" refers "to the attribution of a particular type of income or receipt or property or the like to a designated State, [and] 'apportionment' refers to the division of the tax base by formula[ry equation]." J. Hellerstein, *State Taxation, Corporate Income and Franchise Taxes*, 477–78 n. 1 (1983).

---

**4.** Some confusion may arise from the use of the word "allocation" in the heading of G.L. 1956 (1970 Reenactment) § 44–11–14, as amended by P.L. 1975, ch. 188, art. 1, § 1, "Allocation of income from business partially within state."

The Rhode Island Business Corporation Tax statutes, chapter 11 of title 44, specifically § 44–11–14, does not provide for the "allocation" of income with respect to a nondomiciliary corporation doing business partially within this state, as the word is more precisely understood.

$$\cfrac{\cfrac{\text{(Property} \quad \text{Receipts} \quad \text{Payroll)}}{\text{(in-state} \Leftarrow \text{in-state} \Leftarrow \text{in-state)}}}{3} \times \begin{matrix}\text{Entire corp.} \\ \text{net income}\end{matrix} = \begin{matrix}\text{Amount of net} \\ \text{income taxable} \\ \text{by R.I.}\end{matrix}$$

(everywhere everywhere everywhere)

The particular issues in this case revolve around the tax administrator's inclusion in Homart's entire net-income calculation, the distributive shares that Homart receives by virtue of its status as a general partner in each of these partnerships based upon Homart's partnership interest in each, without also including in the apportionment formula, the proportionate partnerships' factors of payroll, property, and receipts, which gave rise to these distributive shares.

The taxpayer, Homart Development Company, in determining its taxes for each of the fiscal years ending January 31, 1976, 1977, and 1978, included the distributive shares it received as partner from the various partnerships in its corporate net-income calculation for apportionment purposes. Homart also included in the apportionment formula the representative proportions of the partnerships' payroll, property, and receipt factors in the same proportions that gave rise to the distributive shares, reflecting Homart's interests as a partner in each of these individual partnerships. For example, if Homart, as a partner in a particular partnership, had a 90 percent interest as partner and would therefore receive 90 percent of the partnership's net income as its distributive share, Homart not only would include the distributive share in its corporate net income calculation for apportionment purposes but would also include 90 percent of the partnership's property, payroll, and receipt factors as well. Since the partnership conducted no business activity in this state, the payroll, property, and receipt factors of the partnership would be reflected in the denominators or "everywhere" factors of the equation, thus the net result would be a smaller ratio reflecting in-state activity over everywhere activity resulting in a lower amount of net-income taxable by the State of Rhode Island.

In an audit conducted by the Division of Taxation covering the fiscal years ending January 31, 1976, 1977, and 1978, the auditor determined that Homart had properly included its distributive shares in determining its entire corporate net income; however, the auditor determined that it was improper for Homart to have included the partnerships' factors in the apportionment equation.

On administrative review at the request of taxpayer, Homart Development Company, the tax-hearing officer explained in a final decision dated March 17, 1980, that although it was proper to include the distributive share in the corporate taxpayer's net-income calculation, it was improper to have included the partnerships' factors in the equation since § 44–11–14 statutorily includes only the "taxpayer's" payroll, property, and receipt factors. The taxpayer in question here is Homart; therefore, § 44–11–14 does not provide for the inclusion of another separate entity's factors in the equation. This ruling is predicated on the tax administration's interpretation and application of the "entity theory."

A partnership is treated as an entity at the partnership level for purposes of federal-and state-taxation purposes. The partnership does not pay taxes directly, however. Instead, it determines its net income (gross income modified by the deductions and credits due to the partnership) that is reflected on an informational return for both federal and state tax purposes. This net income is then distributed to the partners according to their interest in the partnership. The partner is then required to report, as income, the distributive share received from the partnership on their/its

individual or corporate tax returns. Thus, it is the partner that pays taxes on the proportionate share of income received from the partnership's net income. Since the deductions and credits due to the partnership have been taken at the partnership (entity) level, the partners do not again take advantage of those deductions and credits.

Thus, under the tax administrator's "entity theory" as applied in this case, the distributive share is income to the corporate partner and therefore properly includable in the net-income calculation of the corporation. The hearing officer also cited G.L. 1956 (1969 Reenactment) § 7-12-37 as supporting this position.[5]

However, since § 44-11-14 by its terms allows only for the inclusion of the "taxpayer's" payroll, property, and receipt factors in the apportionment equation, Homart Development Company, the "taxpayer" in question here, cannot include the proportionate partnerships' factors in its equation since the partnerships are separate entities.

The hearing officer also determined that § 44-11-15,[6] a statute designed to remedy inequities flowing from the application of § 44-11-14 to a particular taxpayer, was not to be engaged since taxpayer had not presented "a compelling fact or argument which would require modification" of the apportionment formula.

On October 22, 1982, a second final decision was issued by the Division of Taxation that summarily accepted the prior March 17, 1980 hearing officer's legal rationale and conclusions as equally dispositive of

these latter issues appealed as well. This second administrative hearing arose out of a request for a refund for the fiscal years ending January 31, 1976, 1977, and 1978[7] as well as a request for hearing concerning the assessment of additional taxes based upon a second audit covering the fiscal years ending January 31, 1979, 1980, and 1981.

Homart calculated its business taxes for the fiscal years 1979-81 in the same manner as previously described herein for the fiscal years 1976-78.

This October 22, 1982 decision was appealed by Homart to the District Court. The District Court held that § 44-11-14 must be interpreted to include the partnerships' factors so as not to frustrate the purpose of § 44-11-14, which is to tax only those amounts of an organization's income that is fairly taxable by Rhode Island. "That is done by comparing the income producing activities within the state to all income producing activities responsible for generating the corporation's total income. Since the administrator includes out of state partnership income in the company's total taxable income, it is appropriate to include in the formula the out of state economic activity that generates that income." In doing so, the District Court relied upon §§ 7-12-1 through 7-12-55, specifically § 7-12-36,[8] to establish the ownership of partnership property in the partner as a "tenant in partnership." Therefore, under that rationale, "taxpayer" under § 44-11-14 may be construed to include the partnership payroll, property, and receipt factors in the same proportion that

---

5. General Laws 1956 (1969 Reenactment) § 7-12-37 states:

"Nature of partner's interest in the partnership.—A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."

6. Section 44-11-15 states:

"Variation of method of allocating income.—If at any time the tax administrator, on his own motion or acting upon a complaint by a taxpayer, shall determine that the methods of allocation hereinbefore provided are inequitable either to the state or to the taxpayer, the tax administrator, after affording the tax-

payer reasonable opportunity to be heard, may apply such other method of allocation as shall be equitable and, if necessary, shall redetermine the tax."

7. Homart had to pay the taxes assessed due in the March 17, 1980 decision in order to continue its appeal.

8. Section 7-12-36, as referred to by the District Court, states in pertinent part:

"Nature of a partner's right in specific partnership property.—A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership."

gave rise to the partner's distributive share in the apportionment formula.

The court did not consider the application of § 44–11–15 to the instant matter since its interpretation of §§ 44–11–14 and 7–12–36 was dispositive of the issues involved.

The tax administrator now seeks review of the District Court decision [9] reversing the tax-hearing officer's October 22, 1982 final decision to this court by way of writ of certiorari. We granted the petition for writ of certiorari in an order dated May 23, 1985.

The tax administrator argues here that the District Court's decision was erroneous in that it misapplied and misconstrued the provisions of § 44–11–14; misconstrued and misapplied §§ 7–12–36 and 7–12–37 in pari materia with § 44–11–14; incorrectly applied the taxpayer's interpretation of the "unitary" concept of multistate operations that has neither been enacted by Rhode Island law nor adopted by Rhode Island law; and lastly that the equitable adjustment provision, § 44–11–15, is inapplicable to the case at bar.

Homart argues, as it has consistently argued throughout its appeals, that § 44–11–14 may be properly interpreted to include the partner's proportionate interests in the partnerships' payroll, property, and receipt factors in the "taxpayer's" apportionment formula. In the alternative, Homart argues that § 44–11–15 must be engaged in order to modify § 44–11–14 to include these proportional-partnership factors in the apportionment equation of Homart Development Company, in order to avoid the unconstitutional result obtained by the tax administrator under his interpretation of § 44–11–14 based upon the "entity theory" as delineated by the tax administrator. Accordingly, Homart supports the affirmance of the District Court decision that interpreted §§ 44–11–14 and 7–12–36 to include the proportionate partnerships' factors of payroll, receipt, and property in the "taxpayer" Homart Development Company's formulary apportionment.

9. *See infra,* n. 2 at 1–2.

We agree with the conclusion inherent in the District Court decision that § 44–11–14, as applied by the tax administrator in this instant matter, results in an inequitable apportionment of Homart's business-tax liabilities arising out of business activities conducted within Rhode Island. It was unnecessary, however, for the District Court to have engaged in the interpretation of § 44–11–14 and its interaction with Rhode Island partnership law since once it was clearly established that § 44–11–14, as applied by the tax administrator to the instant factual circumstances, would result in a manifestly inherent distortion of the amount of business activity conducted in this state by the subject taxpayer, it became a statutory duty of the tax administrator to modify § 44–11–14 as provided for pursuant to § 44–11–15, not only to avoid the frustration of the purpose of § 44–11–14 but also to avoid the contravention of those constitutional pronouncements set forth by the Supreme Court in the area of interstate taxation. *See generally F.W. Woolworth Co. v. Taxation and Revenue Department of New Mexico,* 458 U.S. 354, 102 S.Ct. 3128, 73 L. Ed. 2d 819 (1982); *Asarco Inc. v. Idaho State Tax Commission,* 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982); *Mobil Oil Corp. v. Commissioner of Taxes of Vermont,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980).

The tax administrator has agreed at all times that the distributive shares Homart received due to its status as a partner were derived from partnership business activity that was not conducted in Rhode Island. Further, Homart's only corporate business activity in Rhode Island was the ownership and operation of a portion of the Rhode Island Mall. It follows then that the distributive shares did not arise from business activity conducted by Homart in Rhode Island, either as Homart Development Company, the corporation, or in its status as a partner. Thus, it appears that the income to Homart, received as a distributive share, may have no taxable nexus to Rhode Island. *See generally Mobil Oil Corp.,* 445

U.S. at 441–42, 100 S.Ct. at 1234, 63 L.Ed.2d at 523–24, where the Court stated:

"We do not mean to suggest that all dividend income received by corporations operating in interstate commerce is necessarily taxable in each State where that corporation does business. Where the business activities of the dividend payor have nothing to do with the activities of the recipient in the taxing State, due process considerations might well preclude apportionability, because there would be no underlying unitary business."

That question, however, is not before this court since the parties have been in agreement throughout this dispute that the distributive shares were properly includable in Homart's net-income calculation for purposes of formulary apportionment.[10]

Thus, for purposes of this opinion, then, we need decide only whether it was manifestly inequitable for the tax administrator to have excluded the proportionate partnerships' payroll, receipt, and property factors from the apportionment equation that included the income derived from these partnerships, such that it was a duty of the tax administrator to employ § 44–11–15 to modify § 44–11–14 for that purpose. Unquestionably, we think it was.

The inclusion of this income in Homart's net-income calculation for apportionment purposes necessarily requires that the payroll, property, and receipt factors that gave rise to it be included in the apportionment equation also. Otherwise, the net income is subject to an apportionment ratio that reflects only Homart's in-state and everywhere business activity when, in fact, this income did not arise from Homart's corporate business activity but instead arose out of the partnerships' business activities that were not reflected in the apportionment ratio. Such an inherent and manifest distortion as applied to this taxpayer should have been acknowledged and remedied by the tax administrator as provided for under § 44–11–15.

---

**10.** Although we accept, for purposes of this decision, due to the agreement of the parties throughout this appeal, that the distributive shares are properly included in the net-income calculation of Homart Company for apportionment purposes, we do not mean to intimate an acceptance of either party's legal rationale or factual conclusions employed to support their respective position.

Homart's justification for including the distributive shares in the corporate net income for apportionment purposes is based upon its position that Homart and the partnerships are acting concertedly in the operation of a unitary business. *See Mobil Oil Corp. v. Commissioner of Taxes of Vermont,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980). The unitary nature of the corporate and partnership enterprises has not been adjudicated, nor does the tax administrator accept that conclusion.

The tax administrator's justification for including the distributive shares in Homart's net-income calculation for apportionment purposes is based upon its application of the "entity theory" as interpreted and applied by the tax administrator. This entity theory, as applied by the tax administrator, appears to be an incomplete application of the entity theory referred to in L. Hale and R. Kramer's State Tax Liability and Compliance Manual 50–52 (1981), which, if completely and correctly applied, in the case of a nonunitary partnership, would result in the exclusion of the distributive shares from the corporate partner's net-income calculation. "The term 'entity' is used here to indicate that although the organization itself is not directly taxed, the division of income for state tax purposes is done at the partnership level by application of the state allocation and apportionment rules." *Id.* at 50.

In the case of a partnership found to be engaged in the operation of a unitary business with that of the corporate partner, the distributive share received from the partnership would be included in the net-income calculation of the corporation, and the proportionate partnership factors that gave rise to this distributive share would also be included in the corporate formula. *See Id.* at 52; *see also Mobil Oil Corp.,* 445 U.S. at 459, 100 S.Ct. at 1242, 63 L.Ed.2d at 534 (Stevens, J., dissenting) ("[c]learly, it is improper simply to lump huge quantities of investment income that have no special connection with the taxpayer's operations in the taxing State into the tax base and to apportion it on the basis of factors that are used to allocate operating income").

The tax administrator's comments that it does not adhere to the "unitary business" approach to interstate taxation causes this court great concern. The "unitary business" concept is a creature of judicial reasoning growing out of the Supreme Court's decision interpreting the due process clause of the Fourteenth Amendment of the U. S. Constitution in the area of state taxation of interstate business activity. *See Bass, Ratcliff & Gretton, Ltd., v. State Tax Commission,* 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282, (1924). It is therefore not a question of adoption or enactment.

For the reasons stated, the petition for certiorari is hereby denied and dismissed. The writ heretofore issued is quashed. The decision of the District Court is affirmed only insofar as consistent with this opinion.[11] The papers in the case may be remanded to the District Court with instructions to order the tax administrator to recompute taxpayer Homart Development Company's taxes for the fiscal years ending January 31, 1976 to 1981 in accordance with this decision and adjust those payments made accordingly.

---

**11.** It is a well-established rule that the Supreme Court will sustain the correct judgment of a lower-court decision even though it does not accept that court's reasoning. *See Costa v. Gagnon,* 455 A.2d 310 (R.I.1983); *State v. Ibbison,* 448 A.2d 728 (R.I.1982).