CATERPILLAR, INC., Relator,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. C6–97–27.

Supreme Court of Minnesota.

Sept. 11, 1997.

Sutherland, Asbill & Brennan, L.L.P., Jerome B. Libin, Mary E. Monahan, Washington, DC, Daniel J. Schlicksup, Caterpillar, Inc., Peoria, IL, Faegre & Benson, L.L.P., David R. Brennan, Minneapolis, for Relator.

Hubert H. Humphrey, III, Minnesota Attorney General, Thomas K. Overton, Assistant Attorney General, Tax Litigation Division, St. Paul, for Respondent.

## OPINION

PAGE, Justice.

Relator Caterpillar Incorporated ("Caterpillar") raises a constitutional challenge to Minnesota's corporate excise taxation system, alleging that it facially discriminates against foreign commerce in violation of the Foreign Commerce Clause of the United States Constitution. This case arose when Caterpillar sought refunds for Minnesota corporate excise taxes paid on an apportioned share of interest and royalties received from its foreign subsidiaries and a foreign affiliate that were members of Caterpillar's unitary business[1] during the tax years 1979–81 and 1985–87. Respondent Commissioner of Revenue ("Commissioner") denied Caterpillar's claims for the refunds. On appeal to the Minnesota Tax Court, the tax court upheld the constitutionality of the Minnesota corporate excise taxation system and affirmed the Commissioner's ruling. Caterpillar now appeals the tax court's decision and renews its constitutional challenge. We affirm.

The parties have stipulated to the facts underlying Caterpillar's appeal. Caterpillar and other domestic members of its unitary business licensed their trademarks and technology to foreign members of the unitary business in return for royalty payments. Caterpillar also provided intercompany loans to foreign and domestic members of its unitary business and received interest payments on these loans. During the years in question, three domestic members of the unitary business conducted business activity in Minnesota, which resulted in Caterpillar filing Minnesota corporate excise tax returns. During 1979–87, Caterpillar computed its Minnesota corporate excise tax liability according to Minnesota's "water's edge combined" method of reporting.[2] *See* Minn.Stat. § 290.34, subd. 2 (1986).[3]

Because "a State may not tax value earned outside its borders," *ASARCO, Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315, 102 S.Ct. 3103, 3108, 73 L.Ed.2d 787 (1982), the income of a member of a unitary business doing business in Minnesota must be divided between Minnesota and other states. Combined reporting is an accounting device that treats separate corporations engaged in a unitary business as one for the limited purpose of properly accounting for and attributing the income of any one member to a taxing state. Under combined reporting, the income of the members of a unitary business is combined and then apportioned to a particular taxing jurisdiction by using an apportionment formula that takes into account three factors—property, payroll, and sales, *see* Minn.Stat. § 290.19 (1986)—which represent the three major aspects of business activity within a taxing state. *See also* Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* 192 (2d ed.1992). Fair apportionment ensures that a "State taxes only its fair share of an interstate transaction." *Goldberg v. Sweet*, 488 U.S. 252, 260–61, 109 S.Ct. 582, 588, 102 L.Ed.2d 607 (1989). It is an approximation of a cor-

1. Corporations engaged in a unitary business are related through common ownership, management, and/or functional integration so that a "flow of value" and significant mutual interdependence exists between the corporations. *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 178–79, 103 S.Ct. 2933, 2947–48, 77 L.Ed.2d 545 (1983); Minn.Stat. § 290.17, subd. 4 (1996). Members of a unitary business group may be domestic or foreign corporations and may operate in more than one jurisdiction. In this case, Caterpillar is the domestic parent corporation of the unitary business.

2. Minnesota's reporting method includes a domestic, or water's edge, limitation. The term "water's edge" refers to the fact that this method of reporting does not extend beyond the water's edge, *i.e.*, the geographic boundaries of the United States, in determining what activities a state will tax. *E.I. Du Pont de Nemours & Co. v. State Tax Assessor*, 675 A.2d 82, 83 (Me.1996).

3. For purposes of consistency, the parties have agreed to use the 1986 version of Minnesota Statutes in this appeal.

poration's income that is reasonably related to the taxing state.

Minnesota's combined reporting method requires each member of a unitary business engaged in business in Minnesota to file reports disclosing the net income of the entire unitary business. For purposes of determining the net income of the unitary business and the factors to be used in the apportionment of its net income, only the income and apportionment factors of domestic members of the unitary business are included in the combined reports. *See* Minn.Stat. § 290.19, subd. 1(2)(a) (1986). The net income of these domestic members of the unitary business remains unchanged when intragroup transfers, such as interest and royalty payments, occur. *See id.* § 290.34, subd. 2 (1986) ("All intercompany transactions between [domestic] companies which are contained in the combined report shall be eliminated."). In contrast, neither the net income nor the apportionment factors—property, payroll, and sales—of a foreign member of the unitary business are included in the combined reports; rather, foreign members of the unitary business use a "separate entity" or "arm's length" method of reporting.[4] *Id.* As a result, only interest and royalty payments made by the foreign members of the unitary business to the domestic members of the unitary business are included in the combined report because these payments are considered income to the domestic members. *See id.* § 290.01, subd. 20 (1986). This inclusion of the foreign members' interest and royalties payments in the combined report without taking into consideration the foreign members' property, payroll, and sales is at the heart of Caterpillar's appeal.

In December 1993, Caterpillar filed amended Minnesota excise tax returns claiming refunds for the tax years 1979–81 and 1985–87. In these amended returns, Caterpillar included its foreign unitary business members' property, payroll, and sales in the denominator of the apportionment formula. This had the effect of decreasing the appor-

tionment percentage and, accordingly, Caterpillar's Minnesota tax liability. On May 2, 1994, the Commissioner issued a notice of change to Caterpillar, stating that Caterpillar owed additional tax for the years 1980 and 1985, and was entitled to a refund less than the amount claimed for the years 1979, 1981, 1986, and 1987. Caterpillar filed a protest to the Commissioner's notice of change, claiming that Minnesota's taxing system unconstitutionally discriminated against interest and royalty payments made by foreign members of Caterpillar's unitary business to Caterpillar and its domestic subsidiaries in violation of the Foreign Commerce Clause of the United States Constitution. The Commissioner denied Caterpillar's protest and Caterpillar appealed to the Minnesota Tax Court. The tax court heard the parties' cross-motions for summary judgment, found that no discrimination existed, and granted the Commissioner's motion.

In reviewing findings of fact made by the tax court, this court determines whether sufficient evidence exists to support the tax court's decision. *Carlson v. Commissioner of Revenue*, 517 N.W.2d 48, 51 (Minn. 1994). However, we freely review the tax court's conclusions of law, *id.; Nagaraja v. Commissioner of Revenue*, 352 N.W.2d 373, 376 (Minn.1984), and Caterpillar's appeal raises purely legal questions. A taxpayer who challenges a state tax statute under the Foreign Commerce Clause carries the burden of proving that discrimination exists. *See Hughes v. Oklahoma*, 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979); *Norton Co. v. Department of Revenue*, 340 U.S. 534, 537, 71 S.Ct. 377, 380, 95 L.Ed. 517 (1951) ("[A] taxpayer claiming immunity from a tax has the burden of establishing his exemption."). "The power of this court to declare a statute unconstitutional is to be exercised only when absolutely necessary and with extreme caution." *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979) (citation omitted). Accordingly, we will up-

---

4. Under separate entity reporting, a corporation is treated as a separate and distinct entity that is unrelated to the unitary business, and thus dealing at "arm's length" with the unitary business. *Container Corp.*, 463 U.S. at 184–85, 103 S.Ct. at 2950–51. Accordingly, the corporation is subject to taxation only by the jurisdictions in which it operates and only for the income it earns in those jurisdictions. *Id.* at 185, 103 S.Ct. at 2950–51.

hold a statute unless the challenging party demonstrates that it is unconstitutional beyond a reasonable doubt. *Olson v. Ford Motor Co.,* 558 N.W.2d 491, 496 (Minn.1997) (citation omitted).

The Commerce Clause states that "[T]he Congress shall have Power * * * To regulate Commerce with foreign Nations, and among the Several States * * * ." U.S. Const. art. I, § 8, cl. 3. Although the Commerce Clause expressly gives Congress the power to regulate commerce with foreign nations and among the states, the Clause also contains an implied negative command, known as the "dormant" Commerce Clause, which prohibits states from discriminating against foreign trade even where Congress has failed to legislate on the subject. *See Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 178, 115 S.Ct. 1331, 1335, 131 L.Ed.2d 261 (1995); *see also* Laurence H. Tribe, *American Constitutional Law* 469 (2d ed. 1988) ("Limits on state authority to tax foreign commerce are implicit in the commerce clause's grant of congressional power to regulate foreign commerce."). In *Complete Auto Transit v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the United States Supreme Court adopted a four-part test to determine whether a state's tax system violates the Commerce Clause. To pass constitutional muster, a state tax must: "[1][be] applied to an activity with a substantial nexus with the taxing State, [2] * * * [be] fairly apportioned, [3] * * * not discriminate against interstate commerce, and [4] * * * [be] fairly related to the services provided by the State." *Id.* at 279, 97 S.Ct. at 1079. If the state tax fails any part of this test, then the tax is unconstitutional under the Commerce Clause. *Id.*

When foreign commerce is involved, additional scrutiny is required. In *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979), the Supreme Court directed that, when dealing with foreign commerce, in addition to the four-part *Complete Auto* test, the court must inquire as to whether the tax, notwithstanding apportionment, created an "enhanced risk of [international] multiple taxation," *id.* at 446, 99 S.Ct. at 1820, and must also ask whether the tax prevents the federal government from "speaking with one voice" when regulating commercial relations with foreign governments, *id.* at 451, 99 S.Ct. at 1823; that is, the tax must not "impair federal uniformity in an area where federal uniformity is essential." *Id.* at 448, 99 S.Ct. at 1821. If a state tax contravenes either of the two *Japan Line* factors, or any of the *Complete Auto* factors, the tax violates the Commerce Clause. *Id.*

Caterpillar bases its challenge to Minnesota's water's edge combined reporting method solely on the "discrimination" prong of the *Complete Auto* test. In its brief to this court, Caterpillar identifies the issue in this appeal as follows:

> [I]ntragroup interest and royalties paid by a foreign member of the group not doing business in Minnesota are treated less favorably than intragroup interest and royalties paid by a domestic member of the group not doing business in the state.

Caterpillar's position is that under the principles articulated by the U.S. Supreme Court in *Kraft v. Iowa,*[5] this less favorable taxation of foreign source intragroup interest and royalty payments constitutes facial discrimination under the Foreign Commerce Clause.[6]

5. The case of *Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin.* involved a unitary business with both domestic and foreign subsidiaries whose dividends were subject to taxation by the state of Iowa. 505 U.S. 71, 72, 112 S.Ct. 2365, 2366, 120 L.Ed.2d 59 (1992). The United States Supreme Court held that Iowa's tax scheme, which utilized a single entity reporting method, facially discriminated against foreign commerce in violation of the Foreign Commerce Clause. *Id.* at 82, 112 S.Ct. at 2372.

6. Caterpillar attempts to support its position by characterizing interest and royalty payments made by the foreign members of the unitary business to domestic members of the unitary business as payments of the foreign members' earned *income* and by characterizing Minnesota's taxation of these payments as placing a tax burden on the foreign members' income. Thus, Caterpillar argues, if foreign-member income is included in the apportionment formula, then foreign-member property, payroll, and sales must also be included; otherwise, facially discriminatory treatment results. However, Caterpillar's

As an initial matter, we are not wholly convinced that Caterpillar proposes the correct basis for comparison. Caterpillar argues that the Constitution prohibits Minnesota's form of corporate excise tax because it taxes interest and royalties from foreign subsidiaries of a unitary business, but does not tax such receipts from domestic subsidiaries of the unitary business. It may be, however, that the constitutionally relevant comparison is not between receipts from foreign and domestic *subsidiaries,* but between foreign subsidiaries and *unrelated* domestic entities. For purposes of calculating the tax at issue, the Minnesota legislature has essentially chosen to treat Caterpillar's foreign subsidiaries as unrelated entities and their interest and royalty payments as arm's length transactions. Assuming that the state has a legitimate reason for doing so—for example, to avoid problems multinational corporations face with the worldwide combination reporting method [7]—Minnesota's corporate excise tax would surely not "discriminate" against interest and royalty payments from foreign entities: such receipts are treated exactly the same when provided by unrelated domestic entities.

■ But even assuming that Caterpillar's chosen basis for comparison is correct, we are unpersuaded that Caterpillar has demonstrated any constitutionally cognizable "discrimination" under the Foreign Commerce Clause. In light of existing precedent, the operation and purpose of Minnesota's tax statute, and the understanding that the burden of persuasion rests with Caterpillar, we conclude that the Minnesota corporate excise tax statute does not facially discriminate against foreign commerce.

■ The United States Supreme Court has developed various formulations for what constitutes state tax discrimination. A tax may violate the Commerce Clause if it is facially discriminatory, has a discriminatory intent, or has the effect of unduly burdening foreign commerce. *See Amerada Hess Corp. v. Director, Div. of Taxation, New Jersey Dep't of the Treasury,* 490 U.S. 66, 75, 109 S.Ct. 1617, 1622–23, 104 L.Ed.2d 58 (1989). When deciding cases involving challenges based on facial discrimination, the Supreme Court still examines the burdens on interstate commerce rather than simply determining whether intrastate, interstate, and foreign commerce receive identical treatment under a state's tax law. *See Fulton Corp. v. Faulkner,* 516 U.S. 325, ——, 116 S.Ct. 848, 854, 133 L.Ed.2d 796 (1996) (finding a tax discriminatory if it "tax[es] a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the state") (citation and internal quotation marks omitted); *Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin.,* 505 U.S. 71, 79–80, 112 S.Ct. 2365, 2370–71, 120 L.Ed.2d 59 (1992) (finding that Iowa's facially discrimi-

characterization of foreign-member interest and royalty payments as income is a mischaracterization; interest and royalty payments are *expenses* to the foreign member which are presumably deducted from net sales before earned income can be determined. *Cf.* Minn.Stat. §§ 290.01, subd. 22; 290.21, subd. 8 (1986). In reality, interest and royalty payments made by a foreign member of a unitary business to a domestic member in that same unitary business constitute *income to the payee-domestic member,* not income of the payor-foreign member. Moreover, interest and royalty payments are typically the result of contractual obligations and are payable whether the subsidiary realizes net income or sustains a loss.

7. The "worldwide combination" reporting method includes both domestic and foreign-member income and apportionment factors in the apportionment formula and the United States Supreme Court has upheld this method against Due Process and Commerce Clause challenges. *See Container Corp.,* 463 U.S. at 162–63, 184,

103 S.Ct. at 2939, 2950; *Barclays Bank PLC v. Franchise Tax Bd.,* 512 U.S. 298, 304–06, 114 S.Ct. 2268, 2273, 129 L.Ed.2d 244 (1994). However, states have moved away from using this method of reporting because of, among other things, distortion in the apportionment factors resulting from differences in profit margins, capital investment costs, wage rates, and accounting methods among various foreign countries, and the potential problem of international double taxation of the foreign subsidiary's net income. *See* Jerome R. Hellerstein & Walter Hellerstein, *State and Local Taxation* 538–39 (4th ed.1978); Ruurd G. Leegstra et al., *The California Water's Edge Election,* 6 Journal of State Tax'n 195, 195 (1987). In fact, by 1992, no states used worldwide combination reporting without a water's edge limitation. I Jerome R. Hellerstein & Walter Hellerstein, *State Taxation: Corporate Income & Franchise Taxes* ¶ 8.16 (2d ed.1993) [hereinafter "I Hellerstein & Hellerstein"].

natory tax "imposes a burden on foreign subsidiaries that it did not impose on domestic subsidiaries").[8] "State tax discrimination is, then, in part, inequality resulting from a state imposing greater state tax burdens on certain taxpayers than on others." Philip M. Tatarowicz & Rebecca F. Mims–Velarde, *An Analytical Approach to State Tax Discrimination Under the Commerce Clause*, 39 Vand. L.Rev. 879, 898 (1986). Thus, the antidiscrimination prong of the *Complete Auto* test is best viewed as promoting equal treatment of domestic and foreign commerce, but not identical treatment of all taxpayers engaged in domestic and foreign commerce. *Id.* at 925.

Specifically, Caterpillar argues that the water's edge combined reporting method, used by Minnesota to calculate corporate excise taxes, facially discriminates against foreign commerce because it taxes the interest and royalties paid by foreign members of a unitary business to domestic members of the unitary business without including the foreign members' property, payroll, and sales in the apportionment formula, while at the same time including property, payroll and sales in the apportionment formula for do-

mestic members who pay interest and royalties to domestic members of the unitary business.

In support of its argument, Caterpillar relies on the United States Supreme Court's decision in *Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin.*, 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992). In *Kraft*, the Supreme Court held that Iowa's corporate income tax unconstitutionally discriminated against foreign commerce because it included dividends from foreign subsidiaries, but not from domestic subsidiaries, in the taxpayer's tax base.[9] *Id.* at 77, 82, 112 S.Ct. at 2369, 2372. The Supreme Court reached this conclusion despite Iowa's attempt to conform its tax system to the federal corporate income tax system. *Id.* at 82, 112 S.Ct. at 2372.[10] *Kraft* was a relatively easy case for the Court to decide because Iowa used a separate entity reporting method, *see id.* at 74 n. 9, 112 S.Ct. at 2366–68 n. 9, thus, the Court could directly compare Iowa's treatment of dividends received from two separate entities, *i.e.*, the domestic subsidiary and the foreign subsidiary. However, in this case, we are concerned with *combined* reporting, not single entity reporting, and thus must

---

**8.** The Commissioner argues that, because Caterpillar contends that the Minnesota tax scheme is *facially* discriminatory, Caterpillar must show that the tax plan will always lead to an unconstitutional result pursuant to *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In *Salerno*, the United States Supreme Court held that the Bail Reform Act of 1984 was not facially invalid, and in doing so, stated, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* at 745, 107 S.Ct. at 2100.

Although *Salerno* has not been expressly overruled, the Supreme Court failed to apply this test in *Kraft. See* 505 U.S. at 82–83, 112 S.Ct. at 2372 (Rehnquist, J., dissenting) (arguing that *Salerno*'s "no set of circumstances test" should have been applied). This suggests that the *Salerno* principle does not accurately characterize the standard for deciding facial challenges to state tax statutes. *See* Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan. L.Rev. 235, 236 (1994).

**9.** Kraft was a domestic corporation in a unitary business with a number of domestic and foreign subsidiaries. *Kraft*, 505 U.S. at 72, 112 S.Ct. at 2366. Because Kraft conducted part of its busi-

ness in Iowa, it was required to file a corporate tax return in that state. *Id.*

**10.** Under the federal corporate income tax, there is a deduction for dividends received from domestic subsidiaries but not for dividends received from foreign subsidiaries. *See id.* at 73, 112 S.Ct. at 2366; I.R.C. § 243. The purpose of the former deduction is to avoid a second tax on the earnings of domestic corporations, all of which are subject to federal taxation. *Kraft*, 505 U.S. at 73, 112 S.Ct. at 2366. To avoid double taxation of the earnings of foreign corporations, which are not generally subject to federal taxation, federal tax law provides for a credit against foreign taxes paid on such earnings that are also subject to federal taxation, including taxes paid on earnings that are repatriated in the form of dividends. *Id.*; I.R.C. §§ 901, 902.

Like the federal scheme, Iowa's tax law did not allow a parent corporation to deduct dividends received from foreign subsidiaries; however, unlike the federal scheme, Iowa's tax law also did not allow the corresponding credit for taxes paid to foreign countries. *Kraft*, 505 U.S. at 74, 112 S.Ct. at 2366–68. Thus, Iowa's tax law treated dividends received from foreign subsidiaries less favorably than dividends received from domestic subsidiaries in a unitary business.

look at the entire apportionment formula rather than simply the treatment of interest and royalties. *See id.* at 80–81, 112 S.Ct. at 2371–72 (stating that, in evaluating alleged facial discrimination from a state tax, "it is not proper to ignore the operation of other provisions of the *same* statute.") (quoting *amicus* brief of the United States) (emphasis in original).

Looking at the entire apportionment formula utilized under the .Minnesota water's edge combined reporting method, we conclude that the Minnesota tax scheme does not facially discriminate against or unduly burden foreign commerce. Under the apportionment formula, the only foreign commerce that is subject to taxation by Minnesota are interest and royalties paid to the domestic members from the foreign subsidiaries. In contrast, the entire net income of the domestic members is subject to taxation by the Minnesota tax system.[11] Indeed, the underlying purpose of Minnesota's water's edge combined reporting method of taxation is to avoid taxing the foreign subsidiaries' income in the United States by treating them as separate entities engaging in arm's length transactions with the rest of the unitary group. Thus, in light of the operation and purpose of the Minnesota statute, we cannot say that it facially discriminates against or

unduly burdens foreign commerce. Furthermore, on the record before us, Caterpillar has failed to meet its burden of demonstrating an undue burden on foreign commerce in this case. *See Hughes,* 441 U.S. at 336, 99 S.Ct. at 1736. Caterpillar has not shown the difference, if any, between the Minnesota corporate excise tax that would be paid under the water's edge combined method and the corporate excise tax that would be paid if Caterpillar's foreign members were treated similarly to its domestic counterparts.

Finally, we observe that the creation of water's edge reporting was an effort to avoid double taxation on multinational corporations, *i.e.,* taxation by both the United States and a foreign country, as well as the problems associated with the worldwide combination reporting method. In fact, the impetus for states to utilize water's edge reporting instead of worldwide combination reporting originated from multinational companies, such as Caterpillar. *See* I Hellerstein & Hellerstein ¶ 8.16.[12] This effort to avoid international multiple taxation does not appear to implicate the judicial policy against "discrimination" of foreign commerce; rather, a decision threatening such legislative efforts would appear to work against the very pur-

---

**11.** The Supreme Court observed in a footnote in *Kraft* that:

> If one were to compare the aggregate tax imposed by Iowa on a unitary business which included a subsidiary doing business throughout the United States (including Iowa) with the aggregate tax imposed by Iowa on a unitary business which included a foreign subsidiary doing business abroad, it would be difficult to say that Iowa discriminates against the business with the foreign subsidiary. Iowa would tax an apportioned share of the domestic subsidiary's entire earnings, but would tax only the amount of the foreign subsidiary's earnings paid as a dividend to the parent.

505 U.S. at 80 n. 23. We find this footnote instructive by analogy to interest and royalties. We also acknowledge that two other state supreme court decisions, both of which involved constitutional challenges to a water's edge combined method of reporting and the treatment of dividends, distinguished the *Kraft* decision in upholding their states' taxation schemes. *See Appeal of Morton Thiokol, Inc.,* 254 Kan. 23, 864 P.2d 1175, 1186 (1993) (holding that Kansas' domestic combination reporting method was not more burdensome on foreign commerce because

income of the domestic subsidiaries was combined, apportioned, and taxed, while only the dividends from the foreign subsidiaries were taxed); *E.I. Du Pont,* 675 A.2d at 88 (holding that Maine's water's edge combined reporting method provided a "taxing symmetry" for domestic and foreign commerce and that "the inclusion of dividends paid by foreign subsidiaries [did] not constitute the kind of facial discrimination against foreign commerce that caused the Supreme Court to invalidate Iowa's tax scheme in *Kraft.*"); *see also Conoco, Inc. v. Taxation & Revenue Dep't,* 122 N.M. 736, 931 P.2d 730, 735 (1996) (distinguishing domestic combination reporting and striking down New Mexico's separate entity reporting method that was similar to the Iowa reporting method struck down in *Kraft* ).

**12.** "[T]he States yielded to economic and political pressures and threats of multinationals * * * that they would not locate new plants in States that apply the unitary method to the apportionment of their incomes, and the political threat of Federal legislation that would restrict the use of worldwide apportionment by the States." I Hellerstein & Hellerstein ¶ 8.16.

poses of the dormant Foreign Commerce Clause doctrine.

Affirmed.