Merrimack
No. 97-779

CATERPILLAR INC. *& a.*

v.

NEW HAMPSHIRE DEPARTMENT OF REVENUE
ADMINISTRATION *& a.*

October 25, 1999

*Rath, Young, and Pignatelli P.A.*, of Concord (*William F.J. Ardinger* and *Brian T. Tucker* on the brief), *Morrison & Foerster, LLP*, of New York, New York (*Paul H. Frankel* and *Craig B. Fields* on the brief, and *Mr. Frankel* orally), *Sutherland, Asbill & Brennan*, of Washington, D.C. (*Jerome B. Libin* on the brief), and *Daniel J. Schlicksup*, of Peoria, Illinois, by brief, for the plaintiffs.

*Philip T. McLaughlin*, attorney general (*Martin P. Honigberg*, senior assistant attorney general, on the brief and orally), for the defendants.

*Peter S. Garre*, of New London, by brief, as *amicus curiae*.

HORTON, J. The plaintiffs, Caterpillar Inc. and two of its subsidiaries, Caterpillar Financial Services Corporation and Solar Turbines Incorporated, appeal a Superior Court (*McGuire*, J.) order granting the cross-motion for summary judgment of the defendants, the State Department of Revenue Administration and its commissioner, in an action challenging the constitutionality of certain provisions of RSA chapter 77-A (1991 & Supp. 1998). We affirm.

Caterpillar Inc. is a multinational corporation headquartered in Peoria, Illinois. In each of the tax years at issue, Caterpillar Inc. owned over fifty domestic and foreign subsidiaries and several foreign affiliates. Caterpillar Inc. and all of its subsidiaries engaged in one unitary business. *See* RSA 77-A:1, XIV. Only the plaintiffs, however, conducted business in New Hampshire and were thus required to file tax returns on their business profits pursuant to RSA chapter 77-A. *See* RSA 77-A:2 (1991) (amended 1993).

In 1991, the State Department of Revenue Administration (department) audited the plaintiffs' 1987, 1988, and 1989 New Hampshire tax returns and issued a notice of assessment, demanding additional business profits tax payments. The department ordered the plaintiffs to remit the taxes due on royalties and interest received by Caterpillar Inc. from various foreign subsidiaries and affiliates from 1987 through 1989, amounts which the plaintiffs had failed to include as income in their returns. The plaintiffs filed a protest with the department in September 1991, arguing, *inter alia*, that the manner in which the foreign interest and royalty payments had been taxed violated the Commerce Clause of the Federal Constitution, *see* U.S. CONST. art. I, § 8, cl. 3, and requesting an alternate method of apportionment. After a hearing in February 1993, the department rejected the plaintiffs' protest on procedural grounds and declined to decide the constitutional issue based on lack of jurisdiction.

The plaintiffs appealed the department's decision to the superior court. *See* RSA 21-J:28-b, IV (Supp. 1998). The parties filed cross-motions for summary judgment with supporting memoranda. After a hearing, the superior court issued an order in October 1997 granting the defendants' motion for summary judgment. This appeal followed.

The parties have stipulated to the underlying facts and agree that this appeal involves only questions of federal constitutional law. We therefore conduct a *de novo* review of the trial court's decision granting summary judgment in favor of the defendants. *Benoit v. Test Systems*, 142 N.H. 47, 49, 694 A.2d 992, 993 (1997). The heart of this appeal is whether the water's edge apportionment formula in RSA 77-A:3 (1991) (amended 1991, 1993) violates the Commerce Clause by taxing royalty and interest payments received from foreign subsidiaries of a unitary business without subjecting them to global apportionment.

It is well-established that "a State may not tax value earned outside its borders." *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315 (1982). When a business operates in more than one jurisdiction, its income must be apportioned among those jurisdictions and each State must determine its share of the income. *See Container Corp. v. Franchise Tax Bd.*, 463 U.S. 159, 164, 192 (1983). The Federal Constitution does not impose a particular method upon the States in making this determination. *Id.* at 164.

These principles apply when a business is unitary, that is, comprised of several entities among which there is "substantial mutual interdependence." *Container Corp.*, 463 U.S. at 179 (brackets and quotations omitted). Although there is no universally accepted definition of unitary business, *see id.* at 167-69, for constitutional purposes it is minimally "characterized by a flow of value among its components," *Kraft Gen. Foods, Inc. v. Iowa Dept. of Revenue and Finance*, 505 U.S. 71, 76 (1992). New Hampshire defines unitary business as "one or more related business organizations engaged in business activity both within and without this state among which there exists a unity of ownership, operation, and use; or an interdependence in their functions." RSA 77-A:1, XIV.

"[C]ontributions to income [that] result[] from functional integration, centralization of management, and economies of scale," *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 438 (1980), are difficult to capture on the accounting books when determining total tax liability for a unitary business. *See Container Corp.*, 463 U.S. at 164. Further, transfers of value among entities within a unitary

business may mask income earned. *See Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 305 (1994). In order to ascertain their just proportion of the profits earned by a unitary business entity within their respective jurisdictions, most States with a corporate income tax employ formulary apportionment. *See Container Corp.*, 463 U.S. at 164-65. *See generally* Christensen, *Formulary Apportionment: More Simple — On Balance Better?*, 28 LAW & POL'Y INT'L BUS. 1133, 1135 (1997).

> Under the apportionment method, the state considers the income generated by all of the corporation's activities, out-of-state as well as in-state, and then apportions a share of such income to the taxing state by means of a formula that compares the taxpayer's in-state activities to all of its activities.

Hellerstein, *State Taxation of Corporate Income From Intangibles: Allied Signal and Beyond*, 48 TAX L. REV. 739, 745 (1993). At one time, a number of States, *see Barclays Bank PLC*, 512 U.S. at 306, including New Hampshire, calculated taxable income by apportioning the worldwide combined income of the entire unitary group, *see Opinion of the Justices*, 128 N.H. 1, 5, 509 A.2d 734, 737 (1986). Most States using apportionment have now adopted a variant formula, in which the total combined income to be apportioned is confined to the "water's edge" or geographic boundaries of the United States, even though the scope of the unitary business may cross national borders. *See Barclays Bank PLC*, 512 U.S. at 306; *see* RSA 77-A:1, XV, XVI.

New Hampshire's apportionment method operates generally in the following manner: First, the combined net income of the domestic members of the unitary business group is determined (water's edge net income). *See* RSA 77-A:1, XIII, :2-b. Then the three apportionment factors of property, payroll, and sales are calculated to determine the percent of the group's net income attributable to the State for taxation. *See* RSA 77-A:3, I. The property factor is determined by dividing the value of the taxpayer's New Hampshire real and personal property (the numerator) by the value of the real and personal property of the water's edge group (the denominator). *See* RSA 77-A:3, I(a). The payroll and sales factors are similarly calculated. *See* RSA 77-A:3, I(b), (c). The property, payroll, and sales of the foreign members are not considered in calculating the factors. *See* RSA 77-A:1, XV, XVI. The three resulting percentages are averaged by combining them and dividing the total by three. *See* RSA 77-A:3, II(a). This figure is the

apportionment percentage, which is multiplied by the water's edge net income, the product of which is the amount of business profits that New Hampshire may tax. *See generally* RSA 77-A:1, XVI, :2-b, :3.

Royalty and interest payments from one domestic member of the unitary group to another do not change the combined net income of the water's edge group because a receipt to one constitutes a deduction for another. *Cf.* 26 U.S.C.A. §§ 61, 162 (1988). Such payments, however, are eliminated from the combined sales factor (the denominator) to avoid overstating the water's edge sales activity. *See* N.H. TAX FORM 1120 SPECIFIC INSTRUCTIONS FOR FILING COMBINED RETURNS (1988). This is because the combined sales factor is an aggregate of gross receipts and does not account for deductions.

In contrast, royalty and interest payments from a foreign member of the unitary group to a domestic member are treated as if they were made by unrelated businesses. *See* RSA 77-A:1, VI (defining "gross business income"). The payments are manifested as increases to the net income of the water's edge group and are also included in the combined sales factor since they constitute a portion of the gross sales receipts of the domestic group. *See* RSA 77-A:1, XIII (defining "combined net income"), :3, I(c). In short, royalty and interest payments of domestic members of a unitary group are subject to apportionment while similar payments by the foreign members to domestic members are taxed without including the foreign property, payroll, and sales in the apportionment factors because their income is excluded from the tax base.

■■ The Commerce Clause of the Federal Constitution provides that "[t]he Congress shall have power to . . . regulate commerce with foreign nations, and among the several states." U.S. CONST. art. I, § 8, cl. 3. It has long been understood as well "to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 98 (1994). A state tax affecting interstate or foreign commerce violates the Commerce Clause if it: (1) applies to an activity lacking a substantial nexus to the taxing State; (2) is not fairly apportioned; (3) discriminates against interstate commerce; or (4) is not fairly related to the services provided by the State. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977). Additionally, a tax affecting foreign commerce must not create an "enhanced risk of multiple taxation," *Japan Line*

*Ltd. v. County of Los Angeles*, 441 U.S. 434, 446 (1979), or unduly interfere with the Federal Government's ability to "speak with one voice" in matters of international commerce, *id.* at 449. The plaintiffs argue that New Hampshire's method of combining and apportioning corporate income facially discriminates against foreign commerce by treating royalty and interest payments received from foreign members of the Caterpillar unitary group less favorably than royalty and interest payments from domestic members.

We first address the State's argument that under *United States v. Salerno*, 481 U.S. 739 (1987), which examined the constitutionality of the Bail Reform Act of 1984 under the Due Process Clause, a party seeking to invalidate a statute on the grounds of facial discrimination must show that there are no circumstances in which the statute would be valid, *Salerno*, 481 U.S. at 745. Even if *Salerno* correctly stated a test for facial challenges, the Supreme Court failed to apply it to a recent facial challenge to Iowa's tax statute, *see Kraft Gen. Foods, Inc.*, 505 U.S. at 72-82, putting into doubt its applicability in this area of law. We therefore decline to apply it in this case. *See Caterpillar, Inc. v. C.I.R.*, 568 N.W.2d 695, 700 n.8 (Minn. 1997), *cert. denied*, 118 S. Ct. 1043 (1998); *Conoco, Inc. v. Taxation & Revenue Dept.*, 931 P.2d 730, 736-37 (N.M. 1996), *cert. denied*, 521 U.S. 1112 (1997).

■ The party challenging the constitutionality of a state tax bears the burden of proving discrimination. *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979); *see also Barclays Bank PLC*, 512 U.S. at 310-11. "In order to prove that a state tax statute violates the commerce clause, the taxpayer need not show the extent of disparate tax treatment or demonstrate a minimal level of discriminatory effect; the taxpayer need only prove discrimination against commerce." *Smith v. N.H. Dep't of Revenue Admin.*, 141 N.H. 681, 693, 692 A.2d 486, 495 (1997). We will find discrimination if either the statute's purpose or effect is discriminatory. *Id.*

Characterizing the royalty and interest payments as "repatriations" of the foreign subsidiaries' income, the plaintiffs argue that if the foreign subsidiaries' "income" is included in the calculation of total apportionable income, their property, payroll, and sales factors, which generated such income, must also be included. We disagree.

The royalty and interest payments derive from transactions between the domestic members and foreign members of the Caterpillar unitary group. Caterpillar Inc. and certain other domestic members licensed their trademarks and technology in return for

royalty fees and provided loans, payable with interest, to the foreign members. The royalty and interest payments were expenses to the foreign members, deducted on each payor's foreign income tax return. *See Caterpillar Financial Services Corp. v. Whitley*, 680 N.E.2d 1082, 1088 (Ill. App. Ct.), *appeal denied*, 686 N.E.2d 1158 (1997). While perhaps such payments were made from the foreign subsidiaries' income, the payments themselves cannot accurately be characterized as income of the foreign-payors; rather, they constitute income to the domestic recipients and were taxed as such. *See Caterpillar, Inc.*, 568 N.W.2d at 698-99 n.6.

Indeed, royalty and interest payments are usually the result of contractual obligations, independent of the organizational relationship between payor and payee. *See id.* at 699 n.6. The plaintiffs' contention that licensing and borrowing agreements between domestic and foreign entities of a unitary business involve financial considerations absent in agreements between unrelated parties misses the point. The water's edge method purposely ignores the unitary ties between the foreign and domestic members of a unitary group.

Moreover, "[i]n considering claims of discriminatory taxation under the Commerce Clause . . . it is necessary to compare the taxpayers who are 'most similarly situated.'" *Kraft Gen. Foods, Inc.*, 505 U.S. at 80 n.23. The plaintiffs contend that since it is undisputed that Caterpillar Inc. and all of its domestic and foreign subsidiaries and affiliates operate as a unitary business, the comparison should be between the foreign subsidiaries and the domestic subsidiaries. Although the foreign and domestic entities owned by Caterpillar Inc. may form one unitary business in fact, under the water's edge combined reporting, only the domestic members are treated as a unitary business, the income of which is apportionable and taxable by the State. The foreign members of Caterpillar's unitary group are considered unrelated businesses, whose income is not taxed, transacting at arm's length with members of the water's edge group. *See* RSA 77-A:1, I (1991) (amended 1991, 1993, 1994); *see also Caterpillar, Inc.*, 568 N.W.2d at 697. Hence, the proper comparison is between the foreign members of the unitary group and unrelated domestic entities. *See Caterpillar, Inc.*, 568 N.W.2d at 699.

Royalty and interest payments from foreign members to domestic members of a unitary group, like payments for goods, services, and rents, *see* RSA 77-A:1, VI, are treated as income to the domestic members, as they would be if they were paid by unrelated domestic entities, *compare* RSA 77-A:1, IV ("taxable business profits" in-

cludes income from foreign and domestic sources) *with* RSA 77-A:1, XIII ("combined net income" includes income of only domestic entities). The fact that a water's edge group may owe more tax on royalty and interest payments received from foreign subsidiaries than from domestic subsidiaries, all other things being equal, merely reflects the increase in profits of the water's edge group. The result would be no different if the group had received such payments from unrelated third parties rather than foreign subsidiaries. The water's edge method under RSA chapter 77-A thus treats foreign subsidiaries like similarly situated domestic entities, and no discrimination occurs against the foreign subsidiaries. *See Caterpillar Financial Services Corp.*, 680 N.E.2d at 1088.

We point out that the water's edge method was adopted for the benefit of foreign businesses. Prior to 1986, New Hampshire utilized worldwide combined reporting, in which the net income of all members of the unitary group, domestic and foreign, was included in the tax base. *See Opinion of the Justices*, 128 N.H. at 5, 509 A.2d at 737. In 1986, the legislature adopted the water's edge method, "eliminating overseas business organizations from subjection to [the business profits tax]." Laws 1986, 153:1. Accordingly, while the foreign members' apportionment factors are excluded from the calculation of taxable business profits, their income is exempt from State business profits taxation. Royalty and interest payments by the foreign members to domestic members are included as income of the water's edge group because they "represent value earned by [the water's edge group] that is not otherwise captured." *Du Pont De Nemours v. State Tax Assessor*, 675 A.2d 82, 87-88 (Me. 1996). Like other courts that have considered this issue, we see no constitutional reason why such payments should be apportioned by a factor that includes the foreign payors' property, payroll, and sales. *See Caterpillar Financial Services Corp.*, 680 N.E.2d at 1088; *Caterpillar, Inc.*, 568 N.W.2d at 701.

The plaintiffs cite a number of cases to support their position that "factor representation is required in the case of the taxation of a unitary business." Although the plaintiffs' cases considered the propriety of factor representation in worldwide combined reporting, *see, e.g., Homart Development Co. v. Norberg*, 529 A.2d 115, 117 (R.I. 1987), or single entity reporting, *see, e.g., Amer. Tel. & Tel. v. Dept. of Revenue*, 422 N.W.2d 629, 633 (Wis. Ct. App.), *review denied*, 422 N.W.2d 629 (1988), they do not address the additional complexities raised by water's edge combined reporting and are unpersuasive in the case before us. *Cf. Du Pont De Nemours*, 675 A.2d at 87-88 (principles governing single entity reporting inappli-

cable to taxation of foreign dividends under water's edge combined reporting).

The plaintiffs also assert that the dissent in *Mobil Oil Corporation* enunciated a requirement of factor representation in the taxation of unitary businesses that has been adopted by the Supreme Court. *See Mobil Oil*, 495 U.S. at 449-62 (*Stevens*, J., dissenting). *Mobil Oil* concerned the taxation of foreign dividends in the context of single entity formulary apportionment. *See id.* at 441 n.15. The majority declined to address whether the formula itself fairly attributed the dividend income because the taxpayer had not argued it. *Mobil Oil*, 495 U.S. at 434. While the dissent did address the issue, its conclusion that apportionment factors connected to the production of income by the payor corporations should be included in the apportionment formula was premised on the view that "[e]ither [the taxpayer's] worldwide 'petroleum enterprise' is all part of one unitary business, or it is not; if it is, [the State] must evaluate the entire enterprise in a consistent manner." *Id.* at 461 (citation omitted) (*Stevens*, J., dissenting). Here, there is no dispute that the State consistently evaluated the Caterpillar unitary group, consisting of those members within the water's edge of the United States. Moreover, unlike the jurisdiction in *Mobil Oil*, New Hampshire employs combined reporting; thus, while royalty and interest payments are included in the tax base, they are also added to the denominator of the sales factor, resulting in a proportionate reduction of the sales percentage. *See* RSA 77-A:3, I(c). In its constitutional analysis of *Mobil Oil*, the Supreme Court considered the absence of combined reporting, *see Container Corp.*, 463 U.S. at 168 n.5, and therefore it is questionable whether the Court would apply the same analysis to a combined reporting system as the dissent applied to the formula in *Mobil Oil*. Further, the Court's acknowledgement of the *Mobil Oil* dissent has been limited to unitary taxation in the worldwide combined reporting context. *See id.* We have found no Supreme Court case that approves the broad proposition advocated by the plaintiffs as applied to the facts before us. *Cf. ASARCO Inc.*, 458 U.S. at 326-27 n.22 (application of unitary-business principle is fact-specific).

In sum, we reject the plaintiffs' argument that New Hampshire's apportionment formula unconstitutionally discriminates between foreign and domestic subsidiaries in a unitary business. The nature of the water's edge formula requires that foreign subsidiaries be treated differently from domestic subsidiaries: most significantly, the latter's income is subject to taxation while the former's

income is not. The plaintiffs do not allege that this differential treatment is unconstitutional, yet they seek to avoid the incidental effects that flow from it. They fail, however, to meet their burden in proving discrimination. Although New Hampshire's unitary apportionment formula may not apportion income perfectly, the Federal Constitution does not require "mathematical exactitude," only a "rough approximation." *Illinois Cent. R. Co. v. Minnesota*, 309 U.S. 157, 161 (1940). We are satisfied that requirement is met here.

*Affirmed.*

All concurred.